UNITED STATES of America, Plaintiff-Appellee,

v.

The TOWN OF NORTH HEMPSTEAD et al., Defendants-Appellees,

and

The Citizens Concerned About the Landfill et al., Intervenors-Appellees,

and

The State of New York, Intervenor-Appellant.

No. 198, Docket 79–6128.

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1979.

Decided Nov. 20, 1979.

---

Asst. U. S. Atty., Brooklyn N. Y. and Stephen A. Dvorkin, E. P. A., New York City, on the brief), for plaintiff-appellee.

Angelo J. Mangia, Asst. Town Atty., Town of North Hempstead, Manhasset, N. Y. (Joseph A. Guarino, Town Atty., Town of North Hempstead, Manhasset, N. Y., on the brief), for defendants-appellees.

John G. Proudfit, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., and Robert S. Hammer, Asst. Atty. Gen., New York City, on the brief), for intervenor-appellant.

Before MEDINA, MANSFIELD and MESKILL, Circuit Judges.

MEDINA, Circuit Judge:

This appeal involves some questions of considerable importance to those who reside in the vicinity of the Town of North Hempstead in Nassau County, Long Island, New York. The legal questions relate to the operation of the Roslyn incinerator and an extensive landfill used in connection with the disposal of huge quantities of garbage, rubbish and miscellaneous debris. Both the incinerator and the landfill are operated by and wholly under the control of the Town.

The events with which we are concerned start with a proceeding before the Environmental Protection Agency (EPA) pursuant to Section 113(a)(4) of the federal Clean Air Act[1] to investigate and report on violations of the Act by failure to comply with federal and state emission standards. This proceeding resulted in the finding by the EPA that the Roslyn incinerator was emitting approximately three times the permissible amount of particulate matter and was in clear violation of the federal statute. On February 19, 1976, the Government instituted this action in the District Court for the Eastern District of New York against the Town of North Hempstead and certain of its officials to require compliance with

Richard P. Caro, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Harvey M. Stone,

1. 42 U.S.C. § 1857c–8(a)(4) (1976) (currently found at 42 U.S.C. § 7413(a)).

the EPA finding and order issued on March 31, 1975. The relief demanded in the complaint was for appropriate relief, including a permanent or temporary injunction.[2]

To compel compliance the Government moved for summary judgment, *i. e.,* for an order requiring the Town to proceed to upgrade the incinerator or to cease operations until it could meet applicable emission standards. The position of the Government in the early stages was that, upon the basis of the violation as found by the EPA and the non-compliance by the Town, the Government was *ipso facto*, and irrespective of any attendant circumstances, entitled to an order of enforcement. We think this was too rigid a position and that proof of relevant circumstances was admissible in support of what we consider to be the Court's duty, in the exercise of its equitable powers, to fashion its decree in such a way as to deal fairly with the case.[3] We mention this only in passing as, irrespective of the over-comprehensive claim made by the Government, the record shows that the trial

judge not only denied the motion for summary judgment, but he also gave the Town numerous delays, some relating to the upgrading of the incinerator.

During the pendency of the Government's motion for summary judgment, a committee, called the Citizens Concerned About the Landfill, made a motion to intervene on June 2, 1976, which was granted. Annexed to the motion papers was a complaint which was never served nor answered. The purpose of the intervention by the Citizens Concerned About the Landfill was merely to call the Court's attention to the fact that ordering the shutting down as opposed to the upgrading of the incinerator would result in the Town's having to dispose of all of its garbage in a landfill adjacent to the Citizens' homes, much to their discomfort. Nevertheless, as we shall see, and despite the fact that there was then no request or suggestion that he do so, the trial judge practically took over the management of the development and operation of the landfill, a strictly New York State affair.

2. In order to inform the reader without cluttering up the opinion, we include a tabular chronology of all the relevant events preceding the complaint in the instant case:

| Date | Event | Source |
|---|---|---|
| 1966 | Roslyn Incinerator put into operation. | Trial transcript at 558 |
| Summer 1974 | Town's landfill put into operation. | Trial transcript at 1019 |
| Summer 1974 | Complaints made to Town of North Hempstead about odors from landfill. | Trial transcript at 1169 |
| June 7, 1974 | Notice of Violation issued by Environmental Protection Agency re incinerator. | Trial transcript at 1631 Stipulation #14 |
| Dec. 11, 12, 1974 | Stack tests performed. Particulate emission from incinerator was 139 lbs/hr as contrasted with allowable emission rate of 51 lbs/hr. | Trial transcript at 1637 Stipulation #24 |
| Jan. 22, 1975 | Town submitted compliance schedule. | Trial transcript at 1638–39 Stipulation #25 |
| Mar. 31, 1975 | EPA issued Compliance Order with following schedule: | Trial transcript at 1638–39 |
| | Final design to be completed by Aug. 27, 1975. | Stipulation #29 |
| Mar. 31, 1975 | Manufacturing bids to be received by Nov. 12, 1975. | Stipulation #30 |
| | Contracts to be awarded by Dec. 31, 1975. | Stipulation #31 |
| | Applicable emission standards to be achieved by Jan. 11, 1978. | Stipulation #27 |
| June, 1975 | Citizens Concerned About the Landfill formed. | Trial transcript at 1000 |
| July, 1975 | Town decided to discontinue all efforts to comply with EPA Compliance Order. | Trial transcript at 1639 Stipulation #32 |
| Feb. 19, 1976 | United States filed the Complaint. | Complaint |

3. *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). *See, e. g., Lloyd A. Fry Roofing Co. v. United States E.P.A.,* 554 F.2d 885, 889 (8th Cir. 1977), where the Court of Appeals allowed that a party could claim that it was economically and technologically infeasible to comply with state regulations promulgated pursuant to the Clean Air Act during an enforcement proceeding.

## I.

*How Did the Question of the Exercise of the So-Called "Pendent" Jurisdiction by the District Judge Get Into the Case?*

As far as we can discern from this voluminous record, this so-called "pendent" jurisdiction question simply slipped into the case by inadvertence. It was not in any way suggested by counsel for the Town. The Government's position was at first that the Court had no power to even consider matters pertaining to the landfill, a position which in the course of time gradually became a claim that the Court had no subject matter jurisdiction over the landfill. However, during the pendency of the Government's summary judgment motion the Citizens filed a memorandum with the Court on July 19, 1976 in which various options open to the Court were discussed, including the upgrading of the incinerator, the construction and use of a shredder, opposition to the immediate close-down of the incinerator, and the close-down only on certain conditions such as the removal of the dumping area to a place not so near to the residential area or to take the material to New Jersey or to some other distant location.

Thereafter, the Government made various motions to sever the landfill issues and proceed only with the adjudication of the federal issue concerning the incinerator. It was in connection with one of these motions, we think, that the Court got the idea of going into the landfill situation. In the transcript of January 21, 1977, at pages 38–39, the trial judge suggested that "the whole thing" should "go up" as a unit so that we (the Second Circuit Court of Appeals) could "realize what we're dealing with here." In this connection, he minimized the problem of the incinerator and referred to the operation and development of the landfill as "this large problem." It was then that the trial judge spoke of "the tail wagging the dog."

In any event, on December 29, 1976, during the progress of the trial, the Court stated at page 1576 of the trial transcript:

The fact that the state and the citizens have requested permission and have in-

tervened in this lawsuit, they have subjected themselves to the jurisdiction of the Court, and as I see it the Court now has pendant [sic] jurisdiction as to the entire problem.

At the conclusion of the trial on December 29, 1976, the Court announced its decision permanently enjoining the operation of the incinerator after January 11, 1978 except in compliance with the applicable emission standards, and directing that all of the parties meet and submit proposals to the Court regarding the development of a new landfill site farther removed from the Citizens' homes.

After the proposals had been submitted, the trial judge began making frequent reference to what he undoubtedly considered his "pendent" jurisdiction over the landfill and, in the course of time, he began issuing various orders directing the New York State Department of Environmental Conservation (DEC) and the parties to do this and to do that. This went on for a long time with the apparent approval and consent of counsel for the parties, with the exception of the Government. As might well have been anticipated, there was a big difference between telling people to do things and getting them done. All sorts of major and minor disputes arose, due in no small measure to maneuvers by the Town, whose good faith in various matters is challenged in some of the briefs.

From the time the trial judge made his so-called "Final Judgment and Order" on July 11, 1978, the situation with which the parties were faced deteriorated rapidly. This was not only due to the fact that the order was in no real sense "final" and to the fact that it raised more problems than it solved, but also due to the fact that the trial judge had orally ruled that it was the duty of the DEC to file a design and plan which it refused to do. In any event, the Town on April 5, 1979 made a motion to vacate so much of the "Final Judgment" of July 11, 1978 as dealt with the landfill on the ground that the State, by refusing to design and develop the landfill plan, had

made compliance impossible, and to vacate the so-called "modification" set forth in the letter of March 26, 1979 from the DEC. This led to a hearing on May 18, 1979 at which the trial judge outlined a plan to appoint a Special Master who, according to the judge, would "get the job done in the most efficient way possible." This prospect of further protracted delay was too much for all concerned, and it led to the making of two motions.

The first of these two motions was by the Town in effect renewing its first motion of April 5, 1979. The second of these two motions was by the State of New York[4] "dismissing further proceedings in this action on the grounds of lack of jurisdiction over the subject matter." The Court denied both motions without opinion, and the State of New York then brought this appeal.

While it may be that the State of New York at the time it filed its motion intended only to attack any exercise by the Court of subject matter jurisdiction over "further proceedings" relative to the landfill, we consider that it is our duty even on our own motion to consider subject matter jurisdiction *ab initio*. We think it is also clear that the trial judge had no power to assume nor did any of the parties have power to confer any subject matter jurisdiction except such as arose from the application to the case of relevant provisions of the constitution and laws of the United States. Accordingly, and with respect to all parties, we shall now address ourselves to the question: Did the District Court for the Eastern District of New York at any time have "pendent," "ancillary," or any other kind of subject matter jurisdiction over the development and operation of the landfill in this case? We hold and decide that it did not.

## II.

*The Court at No Time Had any "Pendent," "Ancillary" or Any Other Sort of Subject Matter Jurisdiction Over the Landfill.*

No amount of talk can confer subject matter jurisdiction upon a federal court. Nor can subject matter jurisdiction arise from the circumstance that the exercise of such judicial power is desirable or expedient. And this is especially true where the case involves, as here, federal and state courts and administrative agencies with separate and clearly defined powers. The reason for this is that the case must relate to a "case or controversy" as provided in the Judicial Article of the Constitution, and, as the District Courts are "inferior" courts, the "case or controversy" must be one over which the particular court is given by Act of Congress jurisdiction over the subject matter. It is perfectly clear that Section 113(b) of the Clean Air Act contemplates enforcement by the District Courts of the requirements of the Clean Air Act with respect to incinerators. This is what is known as federal question jurisdiction pursuant to 28 U.S.Code, Section 1331. It is equally clear that there is no federal question in the case with respect to the development and operation of the landfill, which is a strictly local affair. The relevant statutory provisions of the State of New York plainly contemplate that the New York State administrative agency, the Department of Environmental Conservation, and the New York State courts are intended to do whatever is necessary to control and supervise the development and operation of these landfills by local municipal officials. *See* Article 27 of the New York Environmental Conservation Law and the regulations contained in 6 N.Y.C.R.R. Part 360.

That there is some relationship between the operation of the incinerator and the development and operation of the landfill, as here, is not sufficient to permit a federal district court to take charge of landfill operations under the guise of so-called "pendent," "ancillary" or any other sort of subject matter jurisdiction. The decisional law on this subject is clear and without dissent, so far as we are aware. The leading case is *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

---

4. New York intervened in this case during the course of the trial on December 23, 1976.

On principle, what is at issue is whether the federal and state claims are sufficiently related so as to be considered to "comprise but one constitutional 'case'", the test of relatedness being whether the claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Here we find nothing to justify a finding by us that the federal and state claims "compromise but one constitutional 'case'". The federal claim is based on the incinerator and the air pollution resulting from its operation. The state claim is based on a garbage landfill and the emission of noxious odors near the homes of some of the local residents. The only link between the two claims is that the garbage which was being incinerated would most likely be placed in the landfill if the incinerator were shut down.[5]

While the courts in applying the *Gibbs* test have generally not required that the fact patterns underlying the claims be identical, *see Bartle v. Markson*, 357 F.2d 517, 522–23 (2d Cir. 1966), they clearly have required something more than the slight factual connection that is presented here.

In *Sun Enterprises, Ltd. v. Train*, 394 F.Supp. 211 (S.D.N.Y.1975), the plaintiffs, wetland owners, brought an action against an upstream real estate developer and federal, state, and local government officials, seeking relief from the sewage disposal activities of the real estate developer. The plaintiffs asserted both federal and state claims against the private defendants claiming that without obtaining a permit pursuant to Section 404 of the Water Act, 33 U.S. Code Section 1344, the real estate developer had dredged and discharged material into one Brown Brook and that the developer had committed nuisance, trespass, and a violation of their riparian rights. Judge Bonsal, hearing a motion to dismiss

the claims, sustained the federal claims. As for the state claims, he stated:

Plaintiffs seek to have the Court exercise pendent jurisdiction over the state law claims . . .. In order for pendent jurisdiction to exist, "[t]he state and federal claims must derive from a common nucleus of operative fact. . . ." This Court's subject matter jurisdiction is limited strictly to questions arising from the discharge into Brown Brook of pollutants which qualify as "dredged or fill material," within the meaning . . . of the Water Act. However, plaintiffs' state law claims as alleged involve not only discharge of "dredged or fill material," but also discharge of sewage treatment effluent and other activities. Since the state claims present substantial issues of fact additional to those presented by the discharge of "dredged or fill material," . . . the state and federal claims cannot be said to derive from a common nucleus of operative fact, and this Court is without pendent jurisdiction.

394 F.Supp. at 224.

In *Reserve Mining Co. v. Environmental Protection Agency*, 514 F.2d 492 (8th Cir. 1975), the Court of Appeals, finding that a taconite company's discharges into the air and water violated federal and state laws, gave the company a reasonable time in which to convert its operations to on-land disposal of the taconite "tailings." However, it refused to exercise jurisdiction over the controversy between the state and the company concerning the location of the on-land disposal site stating that "[t]he matters of furnishing Reserve with an on-land disposal site . . . are governed by provisions of Minnesota state law. . . . The resolution of the controversy over an on-land disposal site does not fall within the jurisdiction of the federal courts." 514 F.2d at 539.

---

5. And this link became weaker and weaker as time wore on. Initially, the incinerator was able to dispose of approximately one-half of the Town's garbage, the remainder going into the landfill. However, from the time of the Government's complaint in February of 1976 until the time of the trial in November of 1976, the incinerator disposed of an average of only 15 percent of the Town's garbage, and the landfill received the remaining 85 percent. *See* Trial Transcript dated December 29, 1976 at pp. 1650–52.

The relationship between the state and federal claims in the above cases is certainly no more attenuated than the relationship of the claims in the instant case, yet, in both cases, the courts refused to exercise pendent jurisdiction.

The history of the two claims in this case further underscores the fact that they do not derive from a common nucleus of operative fact. The United States commenced its enforcement action on February 19, 1976. By that time, the odor problem at the landfill had been extant for almost two years, the first complaints about it having been made when the landfill first began operation in the summer of 1974. The United States and the Department of Environmental Conservation began their respective investigations of the incinerator and the landfill independently of one another, the DEC having found by letter dated June 1, 1976 that "the Town's landfill operation is deficient and requires immediate steps to render it acceptable. . . ." Furthermore, the record reveals that some time after the United States had brought the present action, the Citizens brought an independent action (the history of which is unclear) regarding the landfill against the DEC and the Town in Supreme Court, Nassau County.

Since the state and federal claims in this case do not meet the test for pendent jurisdiction as stated in *Gibbs*, the District Court was without power to hear the state claim.

### III.

### *Conclusion*

While at least some of the parties seem to be of the opinion that we may properly make a ruling affecting only future proceedings relative to the development and operation of the landfill before the DEC and the New York State courts, we think the lack of any subject matter jurisdiction in the District Court makes such a ruling erroneous and inadmissible. We must and we do vacate the whole series of orders and so-called "final" judgements insofar as they usurp the function of the New York State authorities. This will give these New York State authorities a clean slate on which to write their rulings at such time as matters relative to the development and operation of the landfill are properly submitted to these local authorities. We hope this will be done without further delay.

Procedural irregularities almost always breed confusion, the great enemy of justice. And confusion breeds delays. The delays in this case are unconscionable and the confusion defies description. The burden of all this delay and confusion falls most heavily on those affected for all these years by the stench and noisome vapors emanating from the landfill. We think it would inevitably cause further delays and would be a grave injustice to attempt to let stand some of the orders and directions affecting matters within the jurisdiction of the local New York authorities and to vacate others. Some of the parties request us to "remand" part or all of the case affecting the landfill. But there is nothing to remand.

Curiously enough, however, most of the expense already incurred by the Town and others will not have been wasted and it may be assumed that the parties will agree to use the testimony already taken and also the greater part if not the whole of the dossier of documents and stipulations. We hope the new prospective proceedings before the local New York State authorities will be free from attempts to recoup money damages as between the parties to this case, as such future entanglements would seem to be ill-advised and to have little hope of success.

As we cannot say that any of the parties is completely free from blame for the conditions described in this opinion, we reverse the order appealed from and vacate any and all orders made by the District Court which relate to the landfill, but without costs. We do not intend to disturb any part of the record pertaining solely to the incinerator.