**PROGRESSIVE TRANSPORTATION SERVICES, INC., Plaintiff,**

v.

**COUNTY OF ESSEX, Clifford R. Donaldson, Jr., and James E. Pierce, Defendants.**

No. 96–CV–1697.

United States District Court, N.D. New York.

April 3, 1998.

Hinman, Howard & Kattell, Binghamton, NY (Albert Millus, Jr., of counsel), for Plaintiff.

Donohue, Sabo, Varley & Armstrong, Albany, NY (Kenneth Varley, of counsel), for Defendants.

## MEMORANDUM-DECISION & ORDER

McAVOY, Chief Judge.

In this 42 U.S.C. section 1983 civil rights and state law breach of contract action both sides seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. BACKGROUND

Plaintiff Progressive Transportation Services, Inc. ("Progressive") provides, among other things, municipal transportation services for Medicaid recipients and handicapped individuals. In June 1995, defendant Essex County (the "County") advertised for bids on its transportation needs for the 1995–1996 school year. Progressive was the low bidder on four routes and in July 1995, the County awarded a contract to Progressive to transport handicapped children to and from their school programs.

In evaluating the location of the children on two of the routes, Progressive determined that the most efficient way to service those two routes was to use a single vehicle. In May, 1996, Progressive "mentioned" to a County employee that it was using a single vehicle for two routes. Soon afterward, Progressive learned that defendant James Pierce, the County's Purchasing Agent, objected to the use of one vehicle for two routes. As a result, Progressive wrote a letter to Pierce, dated May 24, 1996, explaining Progressive's position. The letter stated, *inter alia*, that "[t]he coordination maximizes the effectiveness of taxpayer's dollars and reduces energy consumption through lower fuel usage." (Bradley Aff., Ex. F).

The County refused to compensate Progressive for the two routes, taking the position that the contract did not allow the two routes to be combined. Progressive's President, Paul Ballard, then sent letters to defendant Clifford Donaldson and the County's Board of Supervisors describing the benefits of coordinated services.[1] In an effort to resolve the dispute, Progressive also had meetings and telephone calls with County officials.

Also in 1996, the County accepted transportation bids for the summer of 1996 and the 1996–1997 school year. Without explanation, the County rejected a number of low bids submitted by Progressive, awarding only a single route. The County also with-

---

1. Progressive's June 27, 1996 letter to Donaldson states, *inter alia*:

During the 1995/96 school year we did coordinate our services for maximum efficiency and lowest cost. While we apparently failed to make this clear to the County this was the basis for putting together our prices. The County did receive the benefit of high quality/safe service at a reasonable price.

(Bradley Aff., Ex. H). Similarly, Progressive's July 16, 1996 letter to the Board of Supervisors, states, *inter alia*:

As a private company unencumbered by redundant rules and regulations, we were able to carry some students from one route on another bus that was in their general area. This reduction in expenses for us was reflected in the prices we bid. We saved the County substantial funds by doing this.

(Bradley Aff., Ex. I).

held $20,016 from amounts owed to Progressive, claiming that it had overpaid Progressive as a result of the combination of the two routes.

On October 24, 1996, Progressive filed the instant Complaint which asserts the County's refusal to award certain routes was done in retaliation for the exercise of Progressive's First Amendment rights. Progressive also brings a pendant state law claim for breach of contract. Presently before the Court is Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment.

## II. DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law will determine what facts are material to the outcome of a case. *See Anderson,* 477 U.S. at 250.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party, however, must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential, Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994).

### A. Progressive's First Amendment Claim

Progressive asserts that the County's refusal to award certain routes was done in retaliation for the exercise of its First Amendment rights. Defendant argues that the speech at issue here is, as a matter of law, not the type of speech that implicates the First Amendment.

The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected ... freedom of speech" even if he has no entitlement to that benefit. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Accordingly, the Supreme Court has held that government employees are constitutionally protected from dismissal for publicly or privately criticizing their employer's policies, *see, e.g., Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), for refusing to take an oath regarding their political affiliation, *see, e.g., Keyishian v. Board of Regents of Univ. of State of N.Y.,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), for expressing hostility to prominent political figures, *see Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), or, except where political affiliation may reasonably be considered an appropriate job qualification, for supporting or affiliating with a particular political party, *see, e.g., United States v. Treasury Employees,* 514 U.S. 1002, 115 S.Ct. 1310, 131 L.Ed.2d 193 (1995). The Supreme Court recently extended these protections to independent contractors. *Board of County Com'rs v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 2346, 135 L.Ed.2d 843 (1996)

The First Amendment, however, does not create property or tenure rights, and does not guarantee absolute freedom of speech. *Id.* 116 S.Ct. at 2347. The First Amendment's guarantee of freedom of speech only protects government employees and contractors from termination because of their speech on matters of public concern. *Id.* (citing *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983) (holding speech on merely private employment matters is unprotected)). To prevail, an employee must prove that the conduct at

issue was constitutionally protected and that it was a substantial or motivating factor in the challenged conduct. *Id.*

Here, the pivotal issue is whether Progressive's speech involved matters of public concern. "When ... expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick,* 103 S.Ct. at 1690. In *Board of County Com'rs v. Umbehr,* for example, the Supreme Court stated that "[t]o prevail, Umbehr must show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him." 116 S.Ct. at 2352.

■ Admittedly, this inquiry is not always an easy one. Whether speech addresses a matter of public concern "must be determined by the content, form, and context of a given statement" *Connick,* 103 S.Ct. at 1690.

■ Here, the context is that of government contractor attempting to collect what it considers to be agreed upon compensation for transportation services. Progressive argues that its speech is a matter of public concern because it involves governmental waste and efficiency, specifically "maximiz[ing] the effectiveness of taxpayer's dollars and reduc[ing] energy consumption through lower fuel usage." (Bradley Aff., Ex. F). These are laudable objectives and certainly within the realm of public concern.

A careful review of the record reveals, however, that Progressive's speech was merely an issue of economic concern to Progressive. Progressive wrote a letter to the County Purchasing Agent, dated May 24, 1996, explaining Progressive's position. The letter asserts that "[t]he coordination maximizes the effectiveness of taxpayer's dollars and reduces energy consumption through lower fuel usage.... As our cost analysis clearly illustrates, separating these runs would have resulted in a certain loss."

(Bradley Aff., Ex. F). Progressive's June 27, 1996 letter to the County Manager explains:

During the 1995/96 school year we did coordinate our services for maximum efficiency and lowest cost. While we apparently failed to make this clear to the County this was the basis for putting together our prices. The County did receive the benefit of high quality/safe service at a reasonable price.

(Bradley Aff., Ex. H). Similarly, Progressive's July 16, 1996 letter to the Board of Supervisors states:

As a private company unencumbered by redundant rules and regulations, we were able to carry some students from one route on another bus that was in their general area. This reduction in expenses for us was reflected in the prices we bid. We saved the County substantial funds by doing this.

(Bradley Aff., Ex. I).

This is not an instance where Progressive was an outspoken critic of governmental waste and inefficiency. In *Umbehr,* by comparison,

Umbehr was an outspoken critic of petitioner .... Umbehr spoke at the Board's meetings, and wrote critical letters and editorials in local newspapers regarding the County's landfill user rates, the cost of obtaining official documents from the County, alleged violations by the Board of the Kansas Open Meetings Act, the County's alleged mismanagement of taxpayers' money, and other topics.... Umbehr also ran unsuccessfully for election to the Board.

116 S.Ct. at 2345. Progressive was seeking more money from the County; money that Progressive believed the County was contractually obligated to pay. Progressive's statements about efficiency and fuel savings were made in the context of its contract negotiations with the County. In *Connick,* the Court cautioned that speech "not otherwise of public concern does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." 103 S.Ct. at 1691 n. 8.

To state it another way, Progressive was trying to convince the County that consolidation—which was in Progressive's financial interest—was also in the County's best interest. As Defendants point out: "By Progressive's logic a road construction company which claimed that its asphalt product was longer lasting and therefore more cost effective would be in the position to claim its First Amendment rights were violated if not awarded a road surfacing contract." (Defs' Reply Mem. of Law at 2).

After reviewing the record in the light most favorable to Plaintiff, the Court nevertheless finds that Progressive's speech does not implicate First Amendment concerns in this context. *See Connick,* 103 S.Ct. at 1690 ("when a [contractor] speaks not as a citizen upon matters of public concern, but instead ... upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a ... decision taken by a public agency allegedly in reaction to the ... behavior"); *Owens v. City of Derby,* 586 F.Supp. 37, 41 (D.Kan.1984) ("Speech related primarily to a personal employment dispute is not protected by the First Amendment.").

Consequently, absent speech that is protected by the First Amendment, Progressive's retaliation claim under 42 U.S.C. section 1983 must fail.

### B. State Law Claim

[redacted] As a final matter, Plaintiff brings a claim for breach of contract. It is now well settled that although the doctrine of supplemental jurisdiction is one of flexibility and discretion, it is fundamental that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, "[a] district court ought not 'reach out for ... issues, thereby depriving state courts of opportunities to develop and apply state law.'" *Young v. New York City Transit Auth.,* 903 F.2d 146, 164 (2d Cir.1990) (quoting *Mayer v. Oil Field Sys. Corp.,* 803 F.2d 749, 757 (2d Cir.1986)). Supplemental jurisdiction should not be exercised merely because "the exercise of such judicial power is desirable or expedient." *United States v. Town of North Hempstead,* 610 F.2d 1025, 1029 (2d Cir.1979).

[redacted] Having determined that Plaintiff's federal claim should be dismissed, this Court chooses to exercise its discretion and dismiss the remaining state law claim pursuant to 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction.").

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. It is therefore **ORDERED,** that Plaintiff's Complaint is DISMISSED in its entirety. Plaintiff's federal claim is dismissed with prejudice. Plaintiff's state law claim is dismissed without prejudice.

**IT IS SO ORDERED.**