915 F.2d 81
 17 Fed.R.Serv.3d 1460
 John J. CURLEY, James Karanfilian and Duane Roberts,
Individually and on Behalf of Brignoli, Curley &
Roberts Associates, a Delaware Limited
Partnership, Plaintiffs-Appellees,
v.
BRIGNOLI, CURLEY & ROBERTS ASSOCIATES, a Limited
Partnership; Brignoli & Curley, Inc., and Richard
Brignoli, Defendants.
Appeal of BRIGNOLI & CURLEY, INC., and Richard Brignoli,
Defendants-Appellants.
Appeal of BRIGNOLI MODELS, INC.
 Nos. 1129, 1130, Dockets 89-7979, 89-9247.
 United States Court of Appeals,
Second Circuit.
 Argued April 12, 1990.
Decided Sept. 20, 1990.
 
 Raymond J. Soffientini, (Battle Fowler, New York City, of counsel), for plaintiff-appellee Brignoli, Curley & Roberts Associates.
 Steven G. Storch (Munves, Tanenhaus & Storch, P.C., New York City, of counsel), for defendants-appellants.
 Fulbright Jaworski & Reavis McGrath (Glen Banks, Linda K. Singer, New York City, of counsel), for plaintiffs-appellees John J. Curley and James Karanfilian.
 Before LUMBARD, FRIEDMAN,* and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 This appeal is taken from a judgment of the United States District Court for the Southern District of New York, Milton Pollack, Judge, ordering dissolution of a limited partnership, the removal of its general partner, and awarding damages occasioned by the misappropriation of an asset of the partnership.
 
 
 2
 During the pendency of this appeal, the Supreme Court determined, in Carden v. Arkoma Associates, --- U.S. ----, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), that in a federal action to which a limited partnership is a party, the citizenship of limited partners must be taken into account to determine whether there is diversity of citizenship among the parties. We recharacterize plaintiff's lawsuit as a class, rather than a derivative, action, and dismiss the limited partnership as a party defendant on the authority of Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), and Fed.R.Civ.P. 21. We then confirm the existence of subject matter jurisdiction, affirm on the merits for the reasons stated in the opinion of the district court, and remand.
 
 BACKGROUND
 
 3
 A. The Parties.
 
 
 4
 Brignoli, Curley & Roberts Associates ("BCR") is a Delaware limited partnership with its principal place of business in New York. The sole general partner of BCR is defendant Brignoli & Curley, Inc. ("BCI"), a Delaware corporation whose principal place of business is also in New York. On December 14, 1987, defendant Richard Brignoli ("Brignoli") became chief executive officer of BCI and assumed control of the day-to-day business operations of BCR. Brignoli's citizenship was disputed below; plaintiffs claim that he is a citizen of New York, while defendants attribute Connecticut citizenship to him.[1] Brignoli, as trustee, owns 50.1% of BCI's stock, and the remainder is owned by plaintiff John J. Curley ("Curley").
 
 
 5
 The limited partners of BCR include Curley and plaintiff James Karanfilian ("Karanfilian"), both citizens of New Jersey, former plaintiff Duane Roberts ("Roberts"),[2] a citizen of Connecticut, and Brignoli Models, Inc. ("BMI"), a Delaware corporation of which Brignoli is the chairman and chief executive officer. Brignoli owns a majority of BMI's stock. Curley, Karanfilian, and Roberts collectively own approximately thirty-six percent of the equity of BCR, and BMI owns approximately fifty-four percent. The balance of the equity of BCR is owned by other limited partners of BCR.
 
 
 6
 B. The Proceedings Below.
 
 
 7
 Curley, Karanfilian, and Roberts commenced this action on July 29, 1988, invoking diversity of citizenship as the basis of federal subject matter jurisdiction. They alleged various breaches of fiduciary duty by BCI as the general partner of BCR and by Brignoli as the person in control of BCI, and sought: (1) removal of BCI as general partner of BCR or, in the alternative, the dissolution of BCR; (2) judgment against Brignoli and BCI in favor of BCR for damages in compensation for breaches of fiduciary duty by Brignoli and BCI; and (3) an accounting as to BCR. BCR, BCI, and Brignoli were named as defendants.
 
 
 8
 Following a bench trial, the district court found that BCI and Brignoli had indeed engaged in improper self-dealing. Among the findings were that BCI and Brignoli wrongfully refused plaintiff's access to BCR's books and records, and that Brignoli misappropriated a $175,000 certificate of deposit from BCR, pledging it to secure a loan to BMI. Pursuant to its opinion dated August 4, 1989, 746 F.Supp. 1208, and judgments entered thereon, the district court granted, inter alia, the following relief: (1) removal of BCI as general partner of BCR; (2) prohibition of BMI from voting its interest in BCR in a subsequent vote by the limited partners (pursuant to the partnership agreement) on whether to replace BCI with a new general partner or to dissolve BCR; (3) after a vote in favor of dissolution, entry of judgment ordering dissolution of BCR under the direction of the law firm Battle Fowler as receiver and liquidating trustee; and (4) entry of judgment against Brignoli and in favor of BCR for the damages occasioned by Brignoli's misappropriation of BCR's certificate of deposit.
 
 This appeal followed.[3]
 DISCUSSION
 
 9
 A. The Diversity Problem.
 
 
 10
 The merits of this appeal need not detain us. The district court's thorough opinion convincingly resolves the questions of fiduciary duty and self-dealing tendered by the parties, and there is no need for an appellate rehash of those fact-specific issues.
 
 
 11
 A significant question of subject matter jurisdiction (indeed, the only question addressed in the oral argument of this appeal), however, is posed by a decision of the Supreme Court, Carden v. Arkoma Associates, --- U.S. ----, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), which was rendered on February 27, 1990, during the pendency of this appeal. Carden answered in the affirmative "[t]he question ... whether, in a suit brought by a limited partnership, the citizenship of the limited partners must be taken into account to determine diversity of citizenship among the parties." 110 S.Ct. at 1016. The opinion subsequently specified that "diversity jurisdiction in a suit by or against [a limited partnership] depends on the citizenship of 'all the members'...." Id. at 1021 (emphasis added) (quoting Chapman v. Barney, 129 U.S. 677, 682, 9 S.Ct. 426, 428, 32 L.Ed. 800 (1889)).
 
 
 12
 Since we must decide this appeal on the basis of the law existing at the time of our decision, see Griffith v. Kentucky, 479 U.S. 314, 322, 107 S.Ct. 708, 717, 93 L.Ed.2d 649 (1987); Hegger v. Green, 646 F.2d 22, 26 (2d Cir.1981), and since subject matter jurisdiction is an unwaivable sine qua non for the exercise of federal judicial power, see Carden, 110 S.Ct. at 1021 (quoting Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453, 20 S.Ct. 690, 691, 44 L.Ed. 842 (1900) (quoting Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884))); Colonial Realty Corp. v. Bache & Co., 358 F.2d 178, 183 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966); Fed.R.Civ.P. 12(h), we must give careful attention to the jurisdictional question posed by Carden.
 
 
 13
 That question arises against the background of the complete-diversity rule first articulated in Strawbridge v. Curtis, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), which establishes that in order to invoke diversity jurisdiction under 28 U.S.C. Sec. 1332 (1988), the plaintiffs must show that none of them shares citizenship with any defendant. Until Carden, the long-standing rule in this circuit was that, in proceedings where a limited partnership was a party but its limited partners could not properly be joined under state law, only the citizenship of general partners was considered for diversity purposes.
 
 
 14
 This rule was stated in Colonial as follows:
 
 
 15
 [T]he citizenship of a limited partnership was not sufficiently made out for diversity purposes by alleging the state of its organization, even though state law permitted the partnership to sue or be sued in the firm name. But ... where, as here, there was diversity between the plaintiff and all the general partners of the defendant, identity of citizenship between the plaintiff and a limited partner was not fatal because under the applicable New York statute a limited partner "is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership." N.Y. Partnership Law Sec. 115. In the absence of a claim of insolvency of the partnership, a suit brought against a New York partnership must thus be considered to be against the general partners only and identity of citizenship between a limited partner and the plaintiff does not destoy [sic] diversity.
 
 
 16
 358 F.2d at 183-84 (case citations and footnote omitted).
 
 
 17
 Admittedly, there existed some doubt as to whether the Colonial rule governed derivative suits brought by limited partners against their limited partnership. Compare Pappas v. Arfaras, 712 F.Supp. 307, 309-11 (E.D.N.Y.1989) (considering limited partners' citizenship and thus destroying diversity), with Tucker Anthony Realty Corp. v. Schlesinger, No. CV-88-0868, slip op. at 6-8, 1989 WL 69891 (E.D.N.Y. June 16, 1989) (disregarding diversity-destroying citizenship of limited partners). Nevertheless, it was at least a plausible reading of Colonial that the citizenship of limited partners was not attributable to the partnership even when the partnership was named as a party to a derivative suit.
 
 
 18
 Curley and Karanfilian, citizens of New Jersey, shared citizenship with neither BCI (the sole general partner of BCR), of Delaware and New York, nor Brignoli, of either New York or Connecticut. BCR was also named as a defendant, but so long as BCR could be deemed to have the citizenship of its general partner only, diversity would exist. If, on the other hand, the citizenship of BCR's limited partners were attributable to BCR as well, diversity would be lacking, because the New Jersey citizenship of Curley and Karanfilian would then be present on both sides of the case. See, e.g., Phillips v. Kula 200, 83 F.R.D. 533 (D.Haw.1978) (no diversity jurisdiction where limited partners sued partnership; citizenship of plaintiff partners attributed to partnership, destroying diversity).
 
 
 19
 In a prejudgment attack on the district court's assertion of diversity jurisdiction, defendants never sought to attribute the limited partners' New Jersey citizenship to defendant BCR. See supra note 1. At the oral argument of this appeal, however, defendants invoked Carden, correctly contending that Carden destroys plaintiffs' diversity scenario because plaintiffs' New Jersey citizenship is also attributed to defendant BCR.
 
 
 20
 The invalidity of plaintiffs' theory of diversity, however, does not end our inquiry. This court must liberally construe plaintiffs' complaint "to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded." New York State Waterways Ass'n v. Diamond, 469 F.2d 419, 421 (2d Cir.1972). Further, there is a developing consensus that a circuit court may look to unpleaded bases of federal subject matter jurisdiction. See Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511, 1515 (9th Cir.1987) ("we are not limited to the jurisdictional statutes identified in the complaint"); Hahn v. United States, 757 F.2d 581, 587 (3rd Cir.1985) (same); see also 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1206, at 91 (2d ed. 1990) ("the court may sustain jurisdiction when an examination of the entire complaint reveals a proper basis for assuming jurisdiction other than one that has been improperly asserted"); cf. 28 U.S.C. Sec. 1653 (1988) ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). Regarding the particular problem presented here, we have espoused "the proposition that a jurisdictionally defective complaint can be regarded as satisfactorily amended if the record as a whole establishes the existence of the required diversity of citizenship between the parties." Baer v. United Servs. Auto. Ass'n, 503 F.2d 393, 397 (2d Cir.1974).
 
 
 21
 Recognizing our "obligation to explore any promising avenue to the District Court's jurisdiction, whether or not it is suggested by the parties," Association of Am. Medical Colleges v. Califano, 569 F.2d 101, 111 (D.C.Cir.1977), we first inquire whether plaintiffs could have brought a class, rather than derivative, action against BCI and Brignoli, pursuant to Fed.R.Civ.P. 23.2. Second, we examine our authority to recharacterize the derivative claim as a class claim, a question largely governed by 28 U.S.C. Sec. 1653 (1988). Finally, we consider whether, in the event of such recharacterization, BCR may be considered a dispensable party pursuant to Fed.R.Civ.P. 19 and accordingly may be dropped as a party at this juncture in the litigation, thus establishing diversity of citizenship and sustaining subject matter jurisdiction. Deciding all three issues in plaintiffs' favor, we confirm the existence of subject matter jurisdiction, affirm on the merits, and remand.
 
 
 22
 B. The Availability of a Class Action.
 
 
 23
 As previously discussed, BCR's diversity-breaking role as a party to this action is occasioned by the derivative nature of the action brought by the limited partner plaintiffs. Curley and Karanfilian could have avoided joining BCR by bringing their claim as plaintiffs suing on behalf of a class of limited partners of BCR. Fed.R.Civ.P. 23.2 provides in pertinent part:
 
 
 24
 An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members.
 
 
 25
 The language of rule 23.2 specifies only one prerequisite to class treatment, fair and adequate representation. The gravamen of the complaint in this case, amply supported by the trial record, is that the general partner, BCI, and its controlling shareholder, Brignoli, looted BCR for Brignoli's benefit. All of the limited partners have an identical interest, as does BCR, in terminating that course of conduct and obtaining recompense from BCI and Brignoli for the harm done by them to BCR. Curley, Karanfilian and Roberts (until his dismissal as a plaintiff) not only were capable of fairly and adequately representing that interest; they in fact did so.
 
 
 26
 BMI is the only limited partner that could arguably disclaim their representation. BMI, however, a corporation of which Brignoli was the principal, was part and parcel of the scheme to plunder BCR for Brignoli's benefit. It would be ludicrous to read rule 23.2 to disqualify the plaintiffs here as proper representatives of the BCR limited partners because they do not fairly represent a limited partner participating in a scheme for the spoilation of BCR at the expense of the class (excluding BMI) of limited partners.
 
 
 27
 This issue was addressed in Lefebvre v. Kelly, No. 83 CV 3211 (ERK), 1987 WL 12036 (E.D.N.Y. May 21, 1987), in the following terms:Defendants also contend that a class action cannot be certified in this case because the interests of the designated class representatives are antagonistic to those of the individual defendants who claim to continue to be members of the Society. While it is obvious that such antagonism exists by virtue of the fact that the individual defendants have been sued by the plaintiff class, this will not defeat the class action procedure on the facts of this case.
 
 
 28
 The purpose underlying the requirement that class representatives fairly and adequately represent the interests of those not appearing is to afford the protection to absent parties which due process requires. Hansberry v. Lee, 311 U.S. 32 [61 S.Ct. 115, 85 L.Ed. 22] (1940). There can be no question in this case but that the interests of the individual defendants are adequately protected. In addition to being named in an individual capacity, the individual defendants serve as directors of the various corporate defendants in this case. When the interests of antagonistic class members are adequately represented by the class' opponents, the requirements of due process are satisfied such that a class can be certified. Horton v. Goose Creek Independent School District, 677 F.2d 471 (5th Cir.1982); Dierks v. Thompson, 414 F.2d 453 (1st Cir.1969); Stolz v. United Brotherhood of Carpenters and Joiners, 620 F.Supp. 396 (D.Nev.1985).
 
 
 29
 Id., slip op. at 8-9.
 
 
 30
 We consider the prerequisites to class certification contained in Fed.R.Civ.P. 23(a), such as the requirement that the class be "so numerous that joinder of all members is impracticable," to be inapplicable to a rule 23.2 class action. While there is some disagreement on this point,[4] the more persuasive reasoning supports this interpretation. Rule 23.2 expressly refers to subdivisions (d) and (e) of rule 23 when incorporating the provisions of rule 23 with respect to orders regarding the conduct of class actions, subdivision (d), and dismissal or compromise, subdivision (e). It would therefore seem that if the drafters sought to incorporate the requirements of subdivision (a) of rule 23, as well, they would have done so expressly. Indeed, the advisory committee note specifies that rule 23.2 deals "separately" with actions under its purview, "referring where appropriate to Rule 23." Fed.R.Civ.P. 23.2 advisory committee's note (emphasis added).
 
 
 31
 We are aware that some courts have adopted the view that a class action under rule 23.2 may be brought only if the state in which the district court sits has denied the association the requisite capacity to be a party to the suit. See, e.g., Northbrook Excess & Surplus Ins. Co. v. Medical Malpractice Joint Underwriting Ass'n of Mass., 900 F.2d 476, 478-79 (1st Cir.1990) (rule 23.2 does not authorize suit against members as a class where state law allows association to be sued as an entity); Suchem, Inc. v. Central Aguirre Sugar Co., 52 F.R.D. 348, 355 (D.P.R.1971) (same); see also Patrician Towers Owners, Inc. v. Fairchild, 513 F.2d 216, 220-21 (4th Cir.1975) (noting Suchem's restrictive interpretation of 23.2 but not reaching the issue); Peerless Ins. Co. v. Aetna Casualty & Sur. Co., 735 F.Supp. 452, 455 (D.N.H.1990) (following Northbrook as governing circuit precedent). This interpretation stems from the following advisory committee comment:
 
 
 32
 Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give "entity treatment" to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b).
 
 
 33
 Fed.R.Civ.P. 23.2 advisory committee's note.
 
 Rule 17(b) provides in relevant part:
 
 34
 [C]apacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right under the Constitution or laws of the United States....
 
 
 35
 Fed.R.Civ.P. 17(b). Northbrook reads the committee note as an instruction that the sole purpose of rule 23.2 is to provide capacity where none exists under state law. Under this reasoning, rule 23.2 is unavailable to limited partners in a federal district court sitting in New York because the partnership has capacity as an entity under state law. See N.Y.Civ.Prac.L. & R. 1025 (McKinney 1976).
 
 
 36
 We disagree with this restrictive interpretation. It must be remembered that the class action mechanism provides litigants with important procedural advantages. For example, class status may expand the number of districts where venue is proper, see Appleton Elec. Co. v. Advance-United Expressways, 494 F.2d 126, 139-40 (7th Cir.1974); may permit a party to litigate the rights of class members not within the court's personal jurisdiction, see Calagaz v. Calhoon, 309 F.2d 248, 253-54 (5th Cir.1962); or may allow a plaintiff to name as representatives only those association members whose citizenship will not disturb diversity jurisdiction, see Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 365-66, 41 S.Ct. 338, 341-42, 65 L.Ed. 673 (1921). If the drafters of rule 23.2 intended to provide only a vehicle for capacity, it seems that they would have simply extended to the diversity realm rule 17(b)'s grant of association capacity in federal question cases.
 
 
 37
 Further, even if the drafters felt compelled to grant capacity in an indirect manner, perhaps to avoid Erie problems in circumventing state capacity limitations, a restrictive interpretation of rule 23.2 does not follow. The more reasonable interpretation is that the drafters, having found it necessary to grant advantageous procedures in states which restrict association capacity,[5] would make those procedures available in all district courts. If they intended the anomaly that the availability of class actions would turn on state capacity laws, the drafters could have so provided in the text of rule 23.2. Accordingly, we agree with those courts that have refused to impose such an interpretation upon the advisory committee note. See, e.g., Kerney v. Fort Griffin Fandangle Ass'n, Inc., 624 F.2d 717, 719-20 (5th Cir.1980); Lefebvre v. Kelley, No. 83 CV 3211 (ERK), slip op. at 6-7 (E.D.N.Y. May 21, 1987); Lumberman's Underwriting Alliance v. Mobil Oil Corp., 612 F.Supp. 1166, 1170 (D.Idaho 1985); see also 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure Sec. 1861, at 223 (2d ed. 1986) (reading advisory committee note to support "the view that Rule 23.2 is a procedural device that provides a supplementary method for unincorporated associations to litigate in a federal court") (citing Lumberman's Underwriting Alliance ).
 
 
 38
 We conclude that plaintiffs could have brought a rule 23.2 class action, rather than a derivative suit, and next examine our authority thus to recharacterize plaintiffs' action at this stage in the proceedings.
 
 
 39
 C. Recharacterization of the Derivative Action as a Class Action.
 
 
 40
 There is no diminution in plaintiffs' substantive rights against defendants if their claim is characterized as seeking class, rather than derivative, relief. Fed.R.Civ.P. 17(b) provides that in the case of an individual acting in a representative capacity, "capacity to sue or be sued shall be determined by the law of the state in which the district court is held," in this case New York. Under New York law, the question whether a suit should be brought as a class action or derivatively turns on the relief sought. Lichtyger v. Franchard Corp., 18 N.Y.2d 528, 534-37, 223 N.E.2d 869, 872-74, 277 N.Y.S.2d 377, 381-84 (1966), held that a class action on behalf of all limited partners properly may redress breaches of fiduciary duty by general partners, while Riviera Congress Assocs. v. Yassky, 18 N.Y.2d 540, 546, 223 N.E.2d 876, 879, 277 N.Y.S.2d 386, 391 (1966), held that suit was "properly" brought derivatively, rather than on behalf of all limited partners as a class, where the partnership had refused to enforce its claim against a third party. As this distinction has survived New York's codification of a limited partners' right to sue derivatively, see N.Y. Partnership Law Sec. 115-a (McKinney 1988) (added by 1968 N.Y.Laws ch. 496, Sec. 3); Alpert v. Haimes, 64 Misc.2d 608, 609-10, 315 N.Y.S.2d 332, 334-36 (Sup.Ct.1970); see also Westchester Religious Inst. v. Condren, 123 A.D.2d 352, 355, 506 N.Y.S.2d 364, 366 (2d Dep't 1986), it seems that plaintiffs arguably ought to have brought a class action wholly aside from considerations as to diversity jurisdiction.
 
 
 41
 The question, then, is whether we can recharacterize their claim at this late date. Under 28 U.S.C. Sec. 1653 (1988), "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." "[U]sually the section is to be construed liberally to permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist." John Birch Society v. National Broadcasting Co., 377 F.2d 194, 198-99 (2d Cir.1967). Since the only question of any consequence presented by the class/derivative dichotomy in this case is the jurisdictional issue, we conclude that section 1653 authorizes us to effect the requisite amendment.
 
 As the Seventh Circuit recently said:
 
 42
 When, as here, the merits have already been decided and factual questions do not need to be resolved regarding prejudice to the correctly named defendant, it would be a meaningless gesture to remand so that the plaintiff could amend its pleading under Rule 15 of the Federal Rules of Civil Procedure. Instead the sensible course is for this Court to permit amendment under 28 U.S.C. Sec. 1653.
 
 
 43
 International Bhd. of Boilermakers v. Local Lodge D354, 897 F.2d 1400, 1402 (7th Cir.1990).
 
 
 44
 The district court tried the issue of the defendants' wrongful acts, concluding that defendants had engaged in massive breaches of their fiduciary duty to BCR. Defendants are not prejudiced by the proposed amendment, because no substantive or procedural disadvantage attaches to defending against the class of BCR's limited partners as opposed to defending a derivative suit. Accordingly, we recharacterize plaintiffs' derivative action as one seeking class relief. We thus reach the final issue: whether, following that recharacterization, BCR may be dismissed as a party at this juncture.
 
 
 45
 D. Dismissal of BCR as a Party.
 
 
 46
 Recently, the Supreme Court ratified the predominant view that circuit courts have the power, even after judgment has been rendered below, to dismiss a dispensable party whose presence prevents statutory diversity jurisdiction.[6] See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 109 S.Ct. 2218, 2220, 104 L.Ed.2d 893 (1989). This authority is founded not upon 28 U.S.C. Sec. 1653 (1988), which allows only the correction of faulty allegations of jurisdiction, see 109 S.Ct. at 2222-23, but rather upon Fed.R.Civ.P. 21, which states in pertinent part: "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just." Id. (emphasis added).
 
 
 47
 The Court warned that this "authority should be exercised sparingly," and that "the appellate court should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." 109 S.Ct. at 2226. We have previously noted the absence of prejudice resulting from the dismissal of BCR. On the contrary, dismissal is particularly appropriate in this case, because it spares plaintiffs the prejudice otherwise occasioned by an unforeseeable change in the law invalidating a long-standing jurisdictional precedent of this court, without impacting in any unfairly adverse manner upon defendants.
 
 
 48
 The question whether a party may be dismissed from an action is essentially governed by Fed.R.Civ.P. 19,[7] which was authoritatively construed by the Supreme Court in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). In that case, the Third Circuit had dismissed a diversity action arising from an automobile accident for want of subject matter jurisdiction on the basis that the owner of the automobile, not named as a defendant in the case, was an indispensable party within the meaning of rule 19(b), thus destroying diversity. Provident Tradesmens Bank & Trust Co. v. Lumbermens Mut. Casualty Co., 365 F.2d 802 (3d Cir.1966) (in banc), rev'd sub nom. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).
 
 
 49
 The Supreme Court reversed. The Court noted that "[t]he optimum solution, an adjudication ... that would be binding on all interested persons, was not 'feasible' [see the captions of subdivisions (a) and (b) of rule 19], for [the owner of the vehicle] could not be made a defendant without destroying diversity." 390 U.S. at 108, 88 S.Ct. at 737. The Court then framed and decided the resulting issue as follows:
 
 
 50
 Hence the problem was the one to which Rule 19(b) appears to address itself: in the absence of a person who "should be joined if feasible," should the court dismiss the action or proceed without him? Since this problem emerged for the first time in the Court of Appeals, there were also two subsidiary questions. First, what was the effect, if any, of the failure of the defendants to raise the matter in the District Court? Second, what was the importance, if any, of the fact that a judgment, binding on the parties although not binding on [the absent defendant], had already been reached after extensive litigation? The three questions prove, on examination, to be interwoven.
 
 
 51
 We conclude, upon consideration of the record and applying the "equity and good conscience" test of Rule 19(b), that the Court of Appeals erred in not allowing the judgment to stand.
 
 
 52
 Id. at 108-09, 88 S.Ct. at 737.
 
 
 53
 The Court went on to emphasize that at the appellate stage of a litigation, successful plaintiffs' "interest in preserving a fully litigated judgment should be overborne only by rather greater opposing considerations than would be required at an earlier stage when the plaintiffs' only concern was for a federal rather than a state forum," id. at 112, 88 S.Ct. at 739; to specify that "[w]hether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of a particular litigation," id. at 118, 88 S.Ct. at 742; and to express its approval of circuit court cases that "demonstrate close attention to the significant pragmatic considerations involved in the particular circumstances, leading to a resolution consistent with practical and creative justice," id. at 119 n. 16, 88 S.Ct. at 743 n. 16.
 
 
 54
 Citing Provident Tradesmens, we recently stated:
 
 
 55
 As an alternative to dismissal, a court should take a flexible approach when deciding what parties need to be present for a just resolution of the suit. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). The phrase "good conscience" implies a careful and constructive consideration of those parties that are necessary to the litigation. As a consequence, very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible.
 
 
 56
 Jaser v. New York Property Ins. Underwriting Ass'n, 815 F.2d 240, 242 (2d Cir.1987); see also Prescription Plan Serv. Corp. v. Franco, 552 F.2d 493, 496-98 (2d Cir.1977); 7 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure Sec. 1610, at 147-48 (2d ed. 1986).
 
 
 57
 Here, as in Provident Tradesmens, BCR is a party which, within the meaning of rule 19(a), should be joined "if feasible," but whose joinder would destroy diversity. We must therefore apply the teaching of Provident Tradesmens and the criteria of rule 19(b) to the facts presented here to determine whether BCR should be dismissed as a party to preserve diversity of citizenship. Accordingly, we briefly review the four factors which rule 19(b) requires "to be considered," in the order stated in the rule: (1) a judgment rendered in BCR's absence will not be prejudicial to BCR or to any of its limited or general partners; (2) the district court can, by shaping the future relief in this action, address and alleviate any anomalies or inconsistencies that would otherwise result from the absence of BCR as a party, especially since all the limited partners (through the class representatives)[8] and the general partner of BCR will be before the district court; (3) again because of the presence of the limited and general partners of BCR, a judgment rendered in its absence will be adequate; and (4) plaintiffs will not have an adequate remedy if their action is dismissed for nonjoinder, since they would then have to commence a new action in state court, foregoing the relief to which they are justly entitled after the proceedings herein in the district court, and risking further transgressions by Brignoli and BCI during the course of the new litigation.
 
 
 58
 We recognize that in Sixth Geostratic Energy Drilling Program 1980 v. Ancor Exploration Co., 544 F.Supp. 297, 298-99 (N.D.Okla.1982), the court ruled that limited partnerships should be added as parties defendant in an action that sought to put them into receivership, even though their general partners were already parties to the lawsuit. The court ruled, however, that the addition of the limited partnerships did not spoil diversity, id. at 299-305, and reserved the question whether, if their addition would preclude diversity, they would then be dropped as parties in reliance upon rule 19(b), id. at 299 n. 1. In both DM II, Ltd. v. Hospital Corp. of America, 130 F.R.D. 469 (N.D.Ga.1989), and Camden Securities Co. v. Lupowitz, 500 F.Supp. 653 (E.D.Pa.1980), on the other hand, the court dismissed an action between the members of a partnership where the partnership had not been joined as a party, resolving a rule 19(b) analysis adversely to diversity jurisdiction.
 
 
 59
 It is noteworthy, however, that in both DM II and Camden Securities, the cases were in a pretrial posture, and the same controversies were the subject of ongoing, parallel state court litigation. In DM II, moreover, the court emphasized its inability to "fashion complete relief in the absence of all partners," 130 F.R.D. at 475, noting that "[j]oinder of each non-party partner would ordinarily satisfy Rule 19, since the interests of the partnership would be adequately represented," id. at 473 n. 5.
 
 
 60
 VMS/PCA Ltd. Partnership v. PCA Partners Ltd. Partnership, 727 F.Supp. 1167, 1169-71 (N.D.Ill.1989), explicitly disagreed with Camden Securities, ruling that although the case was in its initial stages, a rule 19(b) analysis required the conclusion that a joint venture was not an indispensable party since "both joint venturers were present before the court, and ... complete relief could be fashioned in the absence of the Joint Venture." Id. at 1171. The court cited in support of its ruling Godine & Stunda, Inc. v. Reading Station Assocs. Ltd. Partnership, No. Civ. 89-0514, 1989 WL 49214 (E.D.Pa. May 4, 1989), and Whitney v. Citibank, N.A., No. 81 Civ. 5832 (CBM), 1985 WL 566 (S.D.N.Y. Apr. 19, 1985), both cases in which a partnership was determined not to be an indispensable party in litigation where the partners were parties.
 
 
 61
 Whitney, the only one of the cited cases to consider the rule 19(b) question in a post-trial posture, is particularly relevant here. Noting that "there would be great prejudice to [plaintiff] to force him to relitigate this complex case at great expense, particularly when the court has already found that his rights were wilfully violated by defendants," slip op. at 11-12, the court concluded that "[t]o dismiss the present action because a dissolved partnership, which holds no meaningful assets and whose partners are all before the court, cannot be joined as a party would be to exalt form over substance and frustrate the intent of Rule 19," id. at 12.
 
 
 62
 Although Provident Tradesmens teaches that the proper resolution of a rule 19(b) question "can only be determined in the context of particular litigation," 390 U.S. at 118, 88 S.Ct. at 742, Whitney appears to be the most closely analogous precedent to the situation presented herein. In any event, addressing the particularities of this litigation, we see no reason, at this belated juncture, to provide BCI and Brignoli with "a windfall escape from [their] defeat at trial." Provident Tradesmens, 390 U.S. at 112, 88 S.Ct. at 739. "After trial, considerations of efficiency of course include the fact that the time and expense of a trial have already been spent." Id. at 111, 88 S.Ct. at 739. Further, plaintiffs' "interest in preserving a fully litigated judgment should be overborne only by rather greater opposing considerations than would be required at an earlier stage when the plaintiffs' only concern was for a federal rather than a state forum." Id. at 112, 88 S.Ct. at 739.
 
 
 63
 We accordingly conclude that BCR may be dropped as a party defendant, confident that the district court, with all the partners before it,[9] will be able to deal with any resulting difficulties "by protective provisions in the judgment, by the shaping of relief, or by other measures." Fed.R.Civ.P. 19(b).
 
 CONCLUSION
 
 64
 For the foregoing reasons, we recharacterize this lawsuit as a class, rather than a derivative, action, and dismiss BCR as a party. We then confirm the existence of subject matter jurisdiction. Having done so, we affirm the judgments of the district court on the merits for the reasons stated in the opinion of the district court, and remand for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 This issue subsequently became irrelevant in the district court, see infra note 2, and is also irrelevant to our disposition of this appeal
 
 
 [2]
 Roberts, originally a named plaintiff, was dismissed as a party on plaintiffs' motion, pursuant to Fed.R.Civ.P. 21, in order to prevent a challenge to diversity jurisdiction based upon Roberts' Connecticut citizenship. We consider extensively hereinafter the propriety of dismissal of parties in this case pursuant to rule 21
 
 
 [3]
 In a related case, this court affirmed a summary judgment of the United States District Court for the Southern District of New York that awarded $150,000 plus interest to Curley against BMI, based upon a loan agreement which required BMI to repay $150,000 to Curley on or before June 30, 1989 "out of ... the profits paid" to BMI by BCR. See Curley v. Brignoli Models, Incorporated, 907 F.2d 144 (2d Cir.1990)
 
 
 [4]
 Compare Management Television Systs. v. National Football League, 52 F.R.D. 162, 164 (E.D.Pa.1971) (rejecting applicability of numerosity requirement of rule 23(a) to rule 23.2 class action) and 7C C. Wright, A. Miller & M. Kane, Federal Practice & Procedure Sec. 1861, at 221-22 (2d ed. 1986) (no reason to read rule 23(a) requirements, other than fair and adequate representation, into rule 23.2) with Suchem, Inc. v. Central Aguirre Sugar Co., 52 F.R.D. 348, 355 (D.P.R.1971) (apparent that "the same prerequisites contained in Rule 23 for a class action are also required for actions under Rule 23.2")
 
 
 [5]
 We note in this regard that while New York allows an association or partnership to sue in its own right, see N.Y.Civ.Prac.L. & R. 1025 (McKinney 1976), it also allows limited partners to bring a class action pursuant to id. 1005(a), see Lichtyger v. Franchard Corp., 18 N.Y.2d 528, 534, 223 N.E.2d 869, 872, 277 N.Y.S.2d 377, 381-82 (1966)
 
 
 [6]
 In the absence of BCR, the remaining plaintiffs and defendants would be diverse. Given the recharacterization of the action as a class action, Curley and Karanfilian would then represent the class of limited partners (other than BMI), and the citizenship of the other limited partners therefore would not be taken into account for diversity purposes. See Snyder v. Harris, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969); In re "Agent Orange" Prod. Liab. Litigation MDL No. 381, 818 F.2d 145, 162 (2d Cir.1987), cert. denied, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 3606, at 424 (2d ed. 1984)
 
 
 [7]
 Fed.R.Civ.P. 19 provides:
 (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.
 (b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 (c) Pleading Reasons for Nonjoinder. A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a)(1)-(2) hereof who are not joined, and the reasons why they are not joined.
 (d) Exception of Class Actions. This rule is subject to the provisions of Rule 23.
 
 
 [8]
 As indicated earlier herein, the class representatives do not represent BMI, which is not otherwise a party to this litigation, but BMI's principal, Brignoli, is a named defendant. BMI joined the notice of appeal filed by BCI and Brignoli herein as "an aggrieved party," and is accordingly listed in the caption of this appeal as an appellant
 
 
 [9]
 See supra note 7