**900 3RD AVENUE ASSOCIATES, individually and on Behalf of Progress Partners, Plaintiff,**

v.

**Jacobo FINKIELSTAIN, Gustavo Andrew Deutsch, Remo Entelman, Even International Corp., Brissago, S.A., Majola Anstalt, La Rotonda/B.A. Arg., Progress Corporation, N.V., Progress Properties, Inc., J.R.A. Realty Corporation, P–C 900 Third Associates, Micora,**

**N.V., the Federal Deposit Insurance Corporation, as receiver of Central National Bank of New York, Jerome P. Cortellesi, Albert Schwartz, the Almi Group, and John Does and Jane Does, Defendants.**

**No. 89 CIV. 4842 (PKL).**

United States District Court, S.D. New York.

March 12, 1991.

Skadden, Arps, Slate, Meagher & Flom, New York City (Peggy L. Kerr, of counsel), for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn (Allen G. Schwartz, Stephen P. Kramer and Scott A. Eggers, of counsel), Nixon, Hargrave, Devans & Doyle (Frank H. Penski, of counsel), and Ross & Hardies (William Pinzler, of counsel), New York City, for defendants.

## ORDER AND OPINION

LEISURE, District Judge:

This is a diversity action involving numerous claims arising from the alleged mismanagement of a partnership, as well as a claim against the Federal Deposit Insurance Corporation, as receiver of a former tenant, for non-payment of rent. Defendants Jacobo Finkielstain, Gustavo Andrew Deutsch, Progress Corporation, N.V., Progress Properties, Inc., J.R.A. Realty Corporation, P–C 900 Third Associates, Albert Schwartz and The Almi Group L.P. (collectively, the "Moving Defendants"), have moved, *inter alia,* pursuant to Fed.R. Civ.P. 12(b)(1), to dismiss this action for lack of subject matter jurisdiction.

## BACKGROUND

By agreement dated September 1, 1981, defendants Progress Properties, Inc. ("PPI"), and J.R.A. Realty Corporation ("JRA"), formed Progress Partners, a general partnership, to own and manage the real property located at 900 Third Avenue, in New York City. In August 1984, plaintiff 900 3rd Avenue Associates ("Associates") was admitted as a partner in Progress Partners, and a partnership agreement was entered into. A portion of the interest in Progress Partners held by

PPI and JRA was subsequently transferred to P–C 900 Third Associates ("P–C"). PPI, JRA and P–C together hold 51% of Progress Partners, while Associates holds the remaining 49%. In 1985, a 36–story office building was substantially completed on the site.

Under a management agreement with Progress Partners, PPI was appointed manager of the property. It is alleged that while PPI was manager, defendant Jacobo Finkielstain, and other individual defendants acting in concert with him through the corporate defendants, appropriated monies from Progress Partners and breached their fiduciary obligations to Associates. The present action was filed in July 1989. In addition to the twelve claims that arise from these alleged activities of Finkielstain and his associates, the complaint asserts one claim against the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver of the Central National Bank of New York ("CNB"),[1] arising from CNB's non-payment of rent for space CNB occupied in the building at 900 Third Avenue. The Moving Defendants thereafter brought the instant motion. The Court, by memorandum order dated November 15, 1990, requested supplemental briefing from the parties with respect to whether this Court has diversity jurisdiction over this action following the Supreme Court's decision in *Carden v. Arkoma Associates,* 494 U.S. 152, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).

### Discussion

Diversity Jurisdiction

It is a basic legal tenet that diversity must be complete between the parties. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The general rule for establishing the citizenship of an unincorporated association, such as a partnership, for purposes of determining diversity, is that such an association is deemed to be a citizen of every state of which a member is a citizen. *Navarro Savings Association v. Lee,* 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980); *Rhulen Agency Inc. v. Alabama Insurance Guaranty Association,* 896 F.2d 674, 677 (2d Cir. 1990). In *Carden, supra,* 110 S.Ct. 1015, the Supreme Court resolved a split among the Circuits, holding that in diversity cases involving partnerships, citizenship analysis must consider not merely the citizenship of general partners, but that of limited partners as well.

Plaintiff Associates is a general partnership. The general partners in Associates are Carlyle Real Estate Limited Partnership XIV and Carlyle Real Estate Limited Partnership XV (the "Carlyle Partnerships"), each of which, in turn, is a limited partnership. The general partner of both of the Carlyle Partnerships is JMB Realty Corporation ("JMB"). The Carlyle Partnerships also have, between the two of them, approximately 91,000 limited partners.

Because Associates is a partnership, its citizenship must thus be determined by looking to the citizenship of all of its partners. *Carden, supra,* 110 S.Ct. 1015. Associates's partners are the Carlyle Partnerships. The issue then becomes one of determining the citizenship of the Carlyle Partnerships. Under similar circumstances, the Fifth Circuit held that "[s]ince one of the partners [of plaintiff partnership] is also a partnership, the trial court correctly inquired into the citizenship of the partners of [the secondary partnership in determining whether complete diversity existed]." *Village Fair Shopping Center Co. v. Sam Broadhead Trust,* 588 F.2d 431, 433 n. 1 (5th Cir.1979). The Third Circuit has engaged in a similar analysis, requesting, *sua sponte,* additional information regarding the citizenship of a defendant partnership's partners that were, in turn, partnerships themselves. *Knop v. McMahan,* 872 F.2d 1132, 1137–38 (3rd Cir. 1989). *See also General Masonry Construction Co. v. Village One Associates Limited Partnership,* 1989 WL 80331, 1989 U.S.Dist. LEXIS 8206 (E.D.Pa. July

---

**1.** Prior to its collapse in 1987, CNB was a federally-chartered bank with its headquarters in New York.

17, 1989) and *S.W. Kooperman, Inc. v. Village One Associates Limited Partnership*, 1989 WL 71299, 1989 U.S.Dist. LEXIS 6969 (E.D.Pa. June 22, 1989) (both cases dismissing the complaint therein for lack of complete diversity, where plaintiff corporation shared citizenship with a limited partner of a partnership that was a general partner of defendant partnership).

 Defendants are citizens of New York, New Jersey, Florida, and several foreign countries. Accordingly, Associates must demonstrate that none of the 91,000 limited partners of the Carlyle Partnerships is a citizen of any of those states, or of a foreign country. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (party seeking exercise of jurisdiction bears burden of showing such jurisdiction exists); *Horvitz v. Oconefsky*, 683 F.Supp. 959, 963 (S.D.N.Y.), *aff'd without op.*, 868 F.2d 1267 (2d Cir.1988). Associates has not done so, and, indeed, appears in its supplemental brief to concede that this Court does not have diversity jurisdiction over this action. *See* Supplemental Memorandum of Law in Opposition to Certain Defendants' Motion to Dismiss at 2. Accordingly, jurisdiction over this action cannot be bottomed on diversity of the parties herein.

Recharacterization as a Class Action

Associates argues that despite the lack of diversity jurisdiction in this action, the Court can retain jurisdiction by recharacterizing this action as a class action, in which JMB, the general partner of the Carlyle Partnerships, is denominated the class representative. Under this scenario, the class would consist of the partners of Associates (*i.e.*, the Carlyle Partnerships), as well as the general and limited partners of the Carlyle Partnerships. Because "complete diversity is required only between the named plaintiff and the named defendants in a federal class action," *In re "Agent Orange" Product Liability Litigation*, 818

F.2d 145, 162 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988), Associates argues that its proffered scheme permits the Court to exercise diversity jurisdiction over this action.[2]

In support of this proposal to restructure the present litigation, Associates cites the Second Circuit's decision in *Curley v. Brignoli, Curley & Roberts Associates*, 915 F.2d 81 (2nd Cir.1990). *Curley* involved a dispute between a group of limited partners and the general partner of that limited partnership. The limited partners claimed that the general partner had looted the partnership, and brought a derivative action based on diversity against the limited partnership, the general partner, and the controlling shareholder of the general partner. The case proceeded to trial, and the plaintiffs were awarded damages. While the action was on appeal to the Second Circuit, the Supreme Court decided *Carden, supra*, 110 S.Ct. 1015, thereby eliminating diversity jurisdiction in *Curley*.

In order to preserve the trial court's judgment and prevent the defendants from obtaining " 'a windfall escape from [their] defeat at trial,' " *Curley, supra*, 915 F.2d at 91 (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 112, 88 S.Ct. 733, 739, 19 L.Ed.2d 936 (1968)), the Second Circuit held that the action could be recharacterized as a class action, brought by one limited partner on behalf of all limited partners against the general partner.

██ However, *Curley* cannot be read— as Associates would read it—to permit district courts in putative diversity cases involving partnerships, such as this, to subvert the Supreme Court's holding in *Carden* by straining to locate a diverse general or limited partner amid the secondary or tertiary constituent partnerships, and then appointing that partner as a class representative. Rather, *Curley* relied on the fact that under New York law "a class action on behalf of all limited partners properly may redress breaches of fiduciary

---

**2.** JMB is a Delaware corporation with its principal place of business in Illinois. None of the

defendants is a citizen of either of those states.

duty by general partners," *Curley, supra,* 915 F.2d at 88 (citing *Lichtyger v. Franchard Corp.,* 18 N.Y.2d 528, 534–37, 277 N.Y. S.2d 377, 381–84, 223 N.E.2d 869 (1966)), and thus "plaintiffs arguably ought to have brought a class action wholly aside from considerations as to diversity jurisdiction." *Curley, supra,* 915 F.2d at 88.

Such is not the case here. Progress Partners is a general partnership, as is Associates. There is no class of limited partners within those partnerships to bring this case within the ambit of *Curley.* Furthermore, the action as Associates would have it restructured would not be brought by one limited partner on behalf of all limited partners against the general partner, as was the case in *Curley.* Instead, the action would be brought by JMB, the general partner of the Carlyle Partnerships, which partnerships are in turn the general partners of Associates, against numerous third parties and the other partners in Progress Partners. *Curley* is thus inapposite to the case at bar. Indeed, as the *Curley* Court noted, under New York law actions to enforce a partnership's claims against third parties are " 'properly' brought derivatively, rather than on behalf of all limited partners as a class." *Curley, supra,* 915 F.2d at 88 (quoting *Riviera Congress Associates v. Yassky,* 18 N.Y.2d 540, 546, 277 N.Y.S.2d 386, 391, 223 N.E.2d 876 (1966)).

■ Moreover, the present case has not proceeded to trial and judgment, and thus dismissal due to lack of subject matter jurisdiction would not result in the "windfall escape" from judgment, and waste of time and expense, that were of concern to the Second Circuit in *Curley. See Curley, supra,* 915 F.2d at 91–92. Accordingly, this Court will not engage in the awkward procedural exercise suggested by Associates, and thus will decline to restructure this litigation as a class action.

Pendent Party Jurisdiction

Section 209 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1819, provides in relevant part that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." 12 U.S.C. 1819(b)(2)(A). In the case at bar, Associates has asserted twelve state law claims against fifteen non-diverse parties, arising out of the alleged activities of Finkielstain and his associates in appropriating monies from Progress Partners and breaching their fiduciary duties to Associates. In addition, Associates has brought a single claim against the FDIC, in its capacity as receiver of CNB, for non-payment of rent. Associates argues that the inclusion of the rent non-payment claim against the FDIC "federalizes" the entire lawsuit, and thus this Court has "pendent party" jurisdiction over the state law claims against the non-diverse parties.[3]

■ This attempt to force what is essentially a state court action into federal court must be rejected for several reasons. First, Associates has not argued that the constitutional requirements for this Court's exercise of subject matter jurisdiction, set forth by the Supreme Court in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), are met in this case. The Supreme Court has recently held that if pendent party jurisdiction is ever appropriate, the requirements of *Gibbs* must be met as a threshold matter. *See Finley v. United States,* 490 U.S. 545, 551, 109 S.Ct. 2003, 2007–08, 104 L.Ed.2d 593 (1989). *Gibbs* held that in order to support pendent jurisdiction, the relationship between the federal claim and the state claim must "permit[ ] the conclusion that the entire action before the court comprises but one constitutional 'case.' " *Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138. In order to meet this test, the Court held that the federal and state claims "must derive from a common nucleus of operative fact" and be such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138. "Once it appears that a state claim

---

3. The FDIC joins Associates in making this argument.

constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." *Gibbs, supra,* 383 U.S. at 727, 86 S.Ct. at 1140.

■ The relationship between the federal claim and the non-federal claims in the present case fails to satisfy the *Gibbs* test. The claim against the FDIC is one for breach of a lease agreement by CNB, and there is no allegation in the complaint, nor any evidence before the Court, that CNB's non-payment of rent is related to the non-federal claims in this case so as to permit the exercise of pendent jurisdiction. As far as the Court can ascertain, CNB's breach may be entirely unrelated to the "nucleus of operative facts" from which the twelve non-federal claims derive. The mere fact that there is "some relationship" between the CNB lease and the parties and property involved in the bulk of this action is insufficient to support pendent jurisdiction under the teaching of the Supreme Court and the Second Circuit. *See United States v. Town of North Hempstead,* 610 F.2d 1025, 1029 (2d Cir.1979) (holding that federal law claim to close an incinerator did not support pendent jurisdiction over state law claim against operation of a landfill, although closing of incinerator would increase use of the landfill). "While the courts in applying the *Gibbs* test have generally not required that the fact patterns underlying the claims be identical, they clearly have required something more than the slight factual connection that is presented here." *Town of North Hempstead, supra,* 610 F.2d at 1030 (discussing cases). Thus, the exercise of pendent party jurisdiction in the instant case would be inappropriate.

■ Moreover, the Court does not believe that 12 U.S.C. § 1819 "federalizes" every case in which the FDIC is a party so as to support pendent party jurisdiction over claims not involving the FDIC. The

Second Circuit has recently stated that "after the Supreme Court's decision in *Finley,* the continued viability of the doctrine of pendent party jurisdiction in any context is seriously in question." *Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292, 1295 (2d Cir.1990); *see also Staffer v. Bouchard Transportation Company, Inc.,* 878 F.2d 638, 643 n. 5 (2d Cir.1989) (noting in *dicta* that "pendent-party jurisdiction apparently is no longer a viable concept."); C. Wright & A. Miller, 13B *Federal Practice and Procedure* § 3567.2, at 25 (West Supp. 1990) ("lower courts are reading *Finley* as putting an end to [pendent party] jurisdiction"). Although the *Roco* Court held that pendent party jurisdiction may be exercised in admiralty cases, it did so only after stressing " 'the strong admiralty policy in favor of providing efficient procedures for resolving maritime disputes.' " *Roco, supra,* 899 F.2d at 1297 (quoting *In re Oil Spill by Amoco Cadiz off Coast of France,* 699 F.2d 909, 914 (7th Cir.), *cert. denied sub nom. Astilleros Espanoles, S.A. v. Standard Oil Company (Indiana),* 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 172 (1983)). The Court thus concluded that "pendent party jurisdiction is available in the *unique* area of admiralty." *Roco, supra,* 899 F.2d at 1297 (emphasis added).[4]

■ Even if we were to construe the adjective "unique" as somehow ambiguous, the jurisdictional statute applicable to this case, 12 U.S.C. § 1819, does not support the exercise of pendent party jurisdiction. The language of the statute, although conceivably broad in scope, does not in fact "specifically confer[ ] jurisdiction over other claims against additional parties," *Roco, supra,* 899 F.2d at 1295 (citing *Finley, supra*), and, therefore, fails to overcome *Finley's* holding that pendent party jurisdiction is inappropriate absent "an affirmative grant" of such jurisdiction in the statute at issue. *Finley, supra,* 490 U.S. at

**4.** "Unique" is defined by Webster's as "being the only one: sole," *Webster's Third New International Dictionary* 2500 (1981); it does not signify "more than one." The Second Circuit could not have been more clear in its choice of words. *See Chamarac Properties, Inc. v. Pike,* 1990 WL 104022, 1990 U.S.Dist. LEXIS 8783 (S.D.N.Y.

July 18, 1990) (refusing to exercise pendent party jurisdiction in context of securities fraud and racketeering laws, noting the Second Circuit's description of pendent party jurisdiction in *Roco* as being "unique" to the area of admiralty).

553, 109 S.Ct. at 2009. To hold that § 1819 completely and automatically "federalizes" any civil action in which the FDIC is a party, would be to permit a plaintiff to gain access to the federal courts simply by joining a single claim against the FDIC to a variety of state law claims against other parties. Clearly such "coattails" jurisdiction was not intended by Congress when it enacted § 1819, and such a strained interpretation will not be accepted by this Court. *See Federal Deposit Insurance Corp. v. Israel,* 739 F.Supp. 1411, 1414 (C.D.Cal.1990) (holding that 12 U.S.C. § 1819 does not provide pendent party jurisdiction).

 Finally, it is important to recall that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139. The Court may consider, in exercising this discretion, issues of judicial economy, convenience and fairness to the litigants. *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139.[5] In the instant case, although a consolidated action might be more convenient for Associates, the Court believes that a state court would be the more appropriate forum for the efficient and just resolution of Associates' twelve state law claims against the fifteen non-diverse defendants in this action, especially given the weak or non-existent legal relationship between those claims and Associates' claim against the FDIC. Dismissal of Associates' non-federal claims will not prevent Associates from pursuing those claims in state court. *See Albano v. Restaurant Associates Industries, Inc.,* 1991 WL 2995, 1991 U.S.Dist. LEXIS 25 (S.D.N.Y. Jan. 2, 1991) (dismissing pendent party claims where plaintiffs could bring their action in state court). Indeed, there is apparently pending a New York state court declaratory judgment action that could provide a basis for adjudication of the issues raised in the instant case.[6] Accordingly, even if this Court could properly exercise pendent party juris-

diction over all the parties and claims in this action, there exist sufficient and persuasive grounds to decline to do so.

### Conclusion

For the reasons set forth above, the Moving Defendants' motion to dismiss the claims in this action, with the exception of the federal claim against the FDIC, is granted.

SO ORDERED.

---

**5.** The Supreme Court, has, however, explicitly rejected the notion that the efficiency and convenience of a consolidated action can, without more, provide the basis for pendent party juris-

diction. *See Finley, supra,* 490 U.S. at 555–56, 109 S.Ct. at 2011–12.

**6.** *Progress Properties, Inc. v. 900 Third Avenue Associates,* Index No. 13752/90 (N.Y.County).