Donald L. PHILLIPS, and Neil O. Warner, Individually and as limited partners of Kula 200, a Hawaii limited partnership, on behalf of themselves and all other limited partners similarly situated and in the right and for the benefit of said limited partnership, Plaintiffs,

v.

KULA 200, Wick Realty, Inc., a Hawaii Corporation, Wick Associates, a Hawaii partnership, and Erling P. Wick, Defendants.

Civ. No. 77–0390.

United States District Court, D. Hawaii.

April 27, 1978.

William W. Saunders, J. W. Ellsworth, Honolulu, Hawaii, for plaintiffs.

William F. Crockett, Wailuku, Maui, Hawaii, for defendants.

## DECISION ON MOTION TO DISMISS

SAMUEL P. KING, Chief Judge.

This is a derivative action brought on behalf of Kula 200, a limited partnership organized in Hawaii and involved in real estate development in Kula, on the island of Maui. Defendants are two general partners (Erling Wick and Wick Realty, Inc.), a limited partner (Wick Associates), and the limited partnership itself. Mr. Wick is a Hawaii citizen residing on the island of Maui. His two defendant businesses also have Hawaii citizenship. Plaintiffs are limited partners objecting to allegedly fraudulent and unauthorized payments to or on behalf of Wick Realty and Wick Associates. Under the allegations of the original complaint, plaintiffs were mere "residents" of Oregon, California, and Nevada, and defendant Kula 200 had no citizenship at all. I dismissed the complaint. The Oregon plaintiffs returned with an amended complaint naming only themselves as plaintiffs having Oregon citizenship. By moving once again for dismissal for want of subject matter jurisdiction, defendants pose the question of whether a nonresident limited partner may bring a derivative action founded only on diversity jurisdiction in federal court on behalf of a local limited partnership and against resident general partners.[1]

The jurisdictional question posed here is a curiosity. Federal Rule of Civil Procedure 23.1 allows a member of an unincorporated association to bring a derivative action on the association's behalf.[2] Whether diversity

---

1. A leading commentator broached this question. D. Currie, Federal Courts 501 (2d ed. 1975).

2. Federal Rule of Civil Procedure 23.1 provides: In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the

of citizenship could ever form a jurisdictional base for such an action against a fellow member has nonetheless gone unreported, probably because either the membership of the association has been suitably numerous for class treatment, *see, e. g., Philadelphia Local 192 v. American Federation of Teachers*, 44 F.Supp. 345 (E.D.Pa.1942), or the cause of action has posed a federal question. *E. g., Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972); *Miller v. Schweickart*, 405 F.Supp. 366 (S.D.N.Y.1975). Moreover, courts have at times looked only to the citizenship of general partners in determining the citizenship of limited partnerships. *Compare Erving v. Virginia Squire Basketball Club*, 349 F.Supp. 709, 711 (E.D.N.Y. 1972) (ignoring limited partners), *with Carlsberg v. Cambria Savings & Loan Ass'n*, 413 F.Supp. 880 (W.D.Pa.1976).

Since *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), diversity of citizenship jurisdiction has meant complete diversity between adverse parties. Thus, if a limited partnership bears the citizenship of both limited and general partners, diversity jurisdiction will not lie for any derivative action against a general partner, regardless of the alignment of the limited partnership.

The United States Supreme Court has not substantially deviated from the rule established by *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889). Partnerships are not entities having citizenship independent of the citizenship of its members. *Id.* at 682, 9 S.Ct. 426. Limited partnerships are no different. *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 457, 20 S.Ct. 690, 44 L.Ed. 842 (1900). Because

the partnership in *Puerto Rico v. Russell*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933) received treatment as a corporation for purposes of diversity, the Court had an opportunity to revise *Chapman* in *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). In *Bouligny* a labor union sought to establish its citizenship without regard to the citizenship of its members. Despite the union's particularized showing of local prejudice, the Court thought that Congress should be the body to alter existing rules of jurisdiction, particularly in light of the problem of determining the citizenship of large labor unions. *Id.* at 150–51, 152, 86 S.Ct. 272. As to the partnership in *Russell*, that was an "exotic creation of the civil law" which had to be integrated "into a federal scheme which knew it not." *Id.* at 151, 86 S.Ct. at 275.

According to the plaintiffs, *Bouligny* did not entirely dispose of *Russell*. The citizenship of limited partnerships would accordingly be determined solely by the citizenships of the general partners. As it is argued, this would be the case for a number of reasons. Like a corporation, a Hawaii limited partnership has the right to sue or be sued under the Uniform Limited Partnership Act.[3] Like shareholders of a mismanaged corporation, plaintiffs have limited liability—they are limited partners—and a derivative action against managers[4] is explicitly allowed by Federal Rule of Civil Procedure 23.1. Unlike the labor union in *Bouligny* a limited partnership would have citizenship as easily determined as though it had no limited partners.

action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

3. Haw.Rev.Stat. § 425–1 et seq. (1976).

4. Note, *Procedures and Remedies in Limited Partners' Suits for Breach of the General Partner's Fiduciary Duty*, 90 Harv.L.Rev. 763, 700 (1977).

I am unconvinced. Since the turn of the century, the right to sue or be sued has been irrelevant to the citizenship of unincorporated associations. *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. at 455–56, 20 S.Ct. 690. If limited liability were a touchstone to diversity jurisdiction, the citizenship of real estate investment trusts would not comprise the citizenships of their beneficiaries. *Contra, Lincoln Assocs., Inc. v. Great American Mortgage Investors*, 415 F.Supp. 351 (N.D.Tex.1976). Whereas the existence of a cause of action may be important in other jurisdictional questions, *see United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), it is unimportant in determining whether an action easily entertained in state court may be brought in federal court. Although Congress promulgated rule 23.1 after *Bouligny*, it is clear that the federal rules do not expand federal jurisdiction. Federal Rule of Civil Procedure 82. To hold so here would not eviscerate rule 23.1, for limited partners may still bring derivative actions against general partners when federal questions are involved.

The limited partners of Kula 200 will find little comfort in the general purpose of diversity jurisdiction—providing a neutral forum for out-of-state litigants. The plaintiffs contend that the Hawaii Circuit Court for the Second Circuit will disfavor their cause since Erling Wick is a long-time Maui resident. The *Bouligny* Court made it quite clear that bias is no independent ground for diversity jurisdiction. 382 U.S. at 150–51, 86 S.Ct. 272. Not only is deviation from the existing scheme a congressional matter, *Id.*, Congress would be more inclined to restrict this jurisdiction than to expand it.[5] With this judicial and congressional attitude in mind, I need not rerun the well worn path of legal literature[6] in deciding the question posed today.

Plaintiffs must go to state court.

5. H.R. 9622, 95th Cong., 2d Sess. (1978), 124 Cong.Rec. 1553 (1978); S. 2094, 95th Cong., 2d Sess. (1978).

6. *Compare* the restrictive view H. Friendly, Federal Jurisdiction: A General View 139–52 (1973); Bork, *Dealing with the Overload in Article III Courts*, 70 F.R.D. 231, 236–37 (1976); Burger, *Annual Report on the State of the Judiciary*, 62 A.B.A.J. 443 (1976); Friendly, *The Historic Basis of Diversity Jurisdiction*, 41 Harv.L.Rev. 483, 510 (1928), *with* Frank, *Let's Keep Diversity Jurisdiction*, 9 Forum 157 (1973); Frank, *For Maintaining Diversity Jurisdiction*, 73 Yale L.J. 7 (1963); Moore & Wickstein, *Diversity Jurisdiction: Past, Present, and Future*, 43 Tex.L.Rev. 1 (1964).