**Norman SCHIBUK, Plaintiff,**

**v.**

**POINCIANA–REGENCY LIMITED PARTNERSHIP, Regency Securities Corporation and Thomas C. Maloney, Defendants and Third–Party Plaintiffs.**

**POINCIANA–REGENCY LIMITED PARTNERSHIP, Regency Securities Corporation and Thomas C. Maloney, Third–Party Plaintiffs,**

**v.**

**CIRCLE CONSULTING GROUP, INC. and Circle Properties, Ltd.,**

**Third–Party Defendants.**

No. 88 Civ. 3361.

United States District Court, S.D. New York.

May 20, 1991.

Abelman Frayne Rezac & Schwab, Jeffrey A. Schwab, Helmuth P. Svoboda and Michael Aschen, New York City, for plaintiff.

Baer Marks & Upham, Barry J. Mandel and Dov H. Scherzer, New York City, for defendants and third-party plaintiffs.

Cadwalader, Wickersham & Taft, New York City (No response to motion), for third-party defendants.

## MEMORANDUM OPINION AND ORDER

BERNARD NEWMAN, Senior Judge, U.S. Court of International Trade, sitting as a U.S. District Court Judge by designation:

## INTRODUCTION

This is an application by plaintiff, dated March 29, 1991, pursuant to Fed.R.Civ.P. 52 and 59 to reopen, vacate or amend the court's findings of fact and conclusions of law dated March 19, 1991 and the judgment of dismissal for lack of subject matter jurisdiction entered on March 25, 1991. Additionally, in accordance with Fed.R.Civ.P. 15(b) and 28 U.S.C. § 1653 plaintiff seeks leave to file an amended complaint alleging a new cause of action conforming to the evidence at trial. The two applications were properly filed concurrently. *See Markert v. Swift & Co.*, 173 F.2d 517 (2d Cir. 1949); Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1489.

For the reasons that follow, plaintiff's motions are denied. The decision, findings and conclusions of March 19, 1991 and judgment of March 25, 1991 are adhered to in all respects.

## BACKGROUND

This action was commenced on March 13, 1988. In his complaint, Norman Schibuk ("Schibuk") predicates the court's subject matter jurisdiction on diversity of citizenship, 28 U.S.C. § 1332(a). Lack of subject matter jurisdiction was initially raised as an affirmative defense in defendants' answer to the complaint and subsequently presented in the joint pretrial order, but inexplicably was expressly not pressed by defendants when this court called the exigent jurisdictional issue to the attention of counsel at the commencement of trial (Tr. 17).

After a bench trial on June 19 and 20, and August 7, 1990, and the filing of all post-trial briefs, which was finalized on October 29, 1990 by the submission by plaintiff of a response to defendants' reply brief, and while the case was still *sub judice*, counsel for defendants delivered a letter to the court dated February 4, 1991, "to bring to the Court's attention a recent United States Supreme Court decision concerning subject matter jurisdiction which is relevant to the Court's consideration of this matter." Citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (February 27, 1990), and averring the common New York State citizenship of Schibuk, a limited partner in the defendant Poinciana–Regency Limited Partnership ("Poinciana"), and certain other limited partners of Poinciana, defendants requested dismissal of this action for lack of diversity jurisdiction under 28 U.S.C. § 1332(a).

The dispute between the parties on the merits has its genesis in Schibuk's 1986 purchase of units in Poinciana, a Delaware real estate limited partnership, his election

to rescind that purchase and recover his capital contribution by virtue of the conditional option of rescission in the partnership's Offering Memorandum dated July 9, 1986 and alleged fraud, and the refusal by Poinciana's general partners to permit rescission.

At the commencement of this action in 1988 for rescission and damages, Schibuk was a resident of New York. Shortly after Schibuk filed his complaint, he moved his domicile from New York to Vermont. So far as the record shows, Schibuk has never sold, gratuitously transferred, retransferred, or otherwise disposed of his partnership units in Poinciana.

In its decision of March 19, 1991, this court following the holding and rationale of *Carden* found that the requisite complete diversity of citizenship under 28 U.S.C. § 1332(a) between Schibuk (whether a New York or a Vermont limited partner of Poinciana) and *all* of the partnership's limited partners (including Schibuk) was absent and accordingly dismissed this action for lack of diversity jurisdiction. Fed.R.Civ.P. 12(h)((3). Further, the court rejected plaintiff's claim of "ancillary jurisdiction" under New York Civil Practice Law and Rules § 302 and New York Business Corporation Law § 1314.

In his present application, plaintiff seeks: (1) reargument of the issue of diversity jurisdiction; (2) amendment of the court's findings and conclusions to state affirmatively that the court has diversity jurisdiction; and (3) leave to amend the complaint to conform to the evidence adduced at trial, by adding a new cause of action raising a federal question (Fed.R.Civ.P. 15(b)), and to amend his jurisdictional allegations by alleging a federal law cause of action and/or diversity of citizenship (28 U.S.C. § 1653).

## DISCUSSION

### I.

*Diversity Jurisdiction*

#### A.

■ The court first addresses plaintiff's contentions that defendants have failed to support their motion to dismiss with any showing whatever that there was a common citizenship between him and other Poinciana limited partners, and consequently, plaintiff had no burden of proving diversity of citizenship. *See Ostow & Jacobs, Inc. v. Morgan–Jones, Inc.,* 189 F.Supp. 697, 698 (S.D.N.Y.1960) ("Defendant must at least submit some proof that the jurisdictional facts so alleged do not exist").

Defendants argue, correctly, that once the court's diversity jurisdiction is placed in issue, "the burden of proving diverse citizenship falls upon the party invoking federal jurisdiction and remains there even if the other party challenges this assertion." *Lang v. Windsor Mount Joy Mut. Ins. Co.,* 487 F.Supp. 1303 (E.D.Pa.1980), *aff'd without opinion,* 636 F.2d 1209 (3d Cir.1980). *See also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1935) (party invoking jurisdiction "must carry throughout the litigation the burden of showing that he is properly in court"); *Boyd, Weir & Sewell, Inc. v. Fritzen–Halcyon Lijn, Inc.* 709 F.Supp. 77, 78 (S.D.N.Y.1989); *Brignoli v. Balch, Hardy & Schieman, Inc.,* 696 F.Supp. 37, 40 (S.D.N.Y.1988); *Willis v. Westin Hotels Co.,* 651 F.Supp. 598, 601 (S.D.N.Y.1986); *Bevilaqua v. Bernstein,* 642 F.Supp. 1072, 1073 (S.D.N.Y.1986); *Trager v. New Rochelle Hospital Medical Center,* 453 F.Supp. 516, 519 (S.D.N.Y. 1978).

At trial, defendants presented no evidence specifically directed at proving nondiversity of citizenship between Schibuk and other Poinciana limited partners; indeed, the jurisdictional issue raised as an affirmative defense in the answer and pretrial order was expressly not "pressed" by defendants. Nonetheless, it is fundamental that "subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power." *Curley v. Brignoli, Curley & Roberts Associates,* 915 F.2d 81 (2d Cir.1990), *cert denied,* — U.S. —, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991), citing *Carden,* 110 S.Ct. at 1021. *See also, Musico v. Champion Credit Corp.,* 764 F.2d 102 (2d Cir.1985).

Defendants strenuously disclaim they have any burden of proving that this court has subject matter jurisdiction, and in any event, they again point specifically to exhibits F, G, I and J showing that there were Poinciana limited partners with New York mailing addresses. Although obviously not conclusive of domicile or citizenship, those exhibits are a sufficient evidentiary showing ("some factual predicate") to put the matter of diversity of citizenship in issue and place a burden on plaintiff of establishing the jurisdiction of this court in response to defendant's motion to dismiss of February 4, 1991. Obviously, in view of *Carden* (decided on February 27, 1990), Schibuk's New York citizenship at the commencement of the action and the New York addresses of other Poinciana limited partners, raise a serious question concerning this court's diversity jurisdiction. Yet, in his response of February 7, 1991 to defendants' motion to dismiss, plaintiff offered no proof of diversity of citizenship, not even an affidavit on the issue; rather, plaintiff submitted only legal argument, predicated largely on his move to Vermont after commencement of the action and defendants' failure to pursue the issue at trial.

Having lost the first round on the issue of diversity jurisdiction in reliance on questions of law, Schibuk now seeks reargument raising an evidentiary issue concerning the citizenship of Poiciana's other limited partners and the burden of proof. However, on the record presented, the court is constrained to find that plaintiff had the burden of proof on defendants' jurisdictional challenge and has not sustained that burden.

### B.

▉ *Carden* teaches that for diversity of citizenship to exist under 28 U.S.C. § 1332(a), there must be complete diversity on both sides and that the citizenship of a plaintiff limited partner must be diverse with *all* of the partnership's limited partners. This court determined in its opinion of March 19, 1991 that under the *Carden* rationale, there can be no diversity of citizenship in a suit by a limited partner against the limited partnership—regardless of the citizenship of other limited partners—since plaintiff's citizenship would be present on both sides of the case.

Schibuk maintains that *Carden* does not lead to that conclusion. This court disagrees. *See Curley*, 915 F.2d at 84 ("defendants invoked *Carden*, correctly contending that *Carden* destroys plaintiffs' diversity scenario because *plaintiffs' New Jersey citizenship is also attributed to [the] defendant [limited partnership]*" (emphasis added); hence, the New Jersey citizenship of the plaintiff limited partners "would be present on both sides of the case." *See also, Phillips v. Kula 200*, 83 F.R.D. 533 (D.Haw.1978), cited in *Curley*, 915 F.2d at 84.

### C.

▉ Schibuk further argues that since prior to commencement of this action he had rescinded his purchase of units, his citizenship was not present on both sides of this case, as determined by this court.

Of course, if prior to commencement of the action, Schibuk had in fact and law rescinded his purchase of units and thus severed his relationship with Poinciana as a limited partner, as he now asserts, Schibuk's citizenship could not be attributed to Poinciana and would not be present on both sides of the case to bar diversity.

Schibuk's contention that a recission of his purchase of partnership units was a *fait accompli* prior to commencement of the action and therefore he was no longer a Poinciana limited partner is creative advocacy, but unsupportable by legal analysis.

Prior to commencement of this action, Schibuk sought rescission under a *contractual option to rescind* his purchase of partnership units on the ground that Poinciana had, allegedly, failed to obtain permanent financing within the time limit and in accord with the terms and conditions of the Offering Memorandum. Schibuk's *demands* for rescission were admittedly rejected by the general partners of Poinciana and consequently Schibuk retained his partnership units and filed this action to obtain judicial enforcement of his right of rescission. Plaintiff now also asserts fraud

as a ground for rescission and damages. Whether the specified conditions for permitting rescission were present, or whether Schibuk's demand for rescission was properly rejected by the general partners, or whether there was any waiver by plaintiff or misrepresentations by defendant, of course, go to the very merits for trial, not to jurisdiction.

At the commencement of this action Schibuk had already fully paid in his capital contribution to Poinciana, received his units, and was still a Poinciana limited partner. In the context of this fully executed purchase agreement on both sides, "rescission" by definition could not be accomplished by simply a unilateral demand for or a declaration of rescission by Schibuk, but required bilateral action of the parties to place both sides in status quo or the relative positions they occupied prior to the sale and purchase of the partnership units. *See Black's Law Dictionary*, 4th Ed., p. 1471. Hence, "rescission" of Schibuk's executed purchase agreement (by retransfer of his units to the partnership and a return of his purchase money), obviously, never occurred prior to commencement of this action and that is why Schibuk sued. But Schibuk's right to rescind must be adjudicated by a court having subject matter jurisdiction. Unfortunately, for Schibuk, *Carden* deprives this court of diversity jurisdiction.

### D.

Plaintiff asserts a new legal argument (not presented in his previous response of February 7, 1991) that on the basis of the equities, *Carden* should not be applied retroactively, citing *Byrne v. Buffalo Creek R. Co.*, 765 F.2d 364 (2d Cir. 1985). *Byrne* and other decisions pertaining to retroactive application of Supreme Court decisions was very recently addressed at length by this court and held not a bar retroactive application of *Carden*. *See Shlomchik v. Richmond 103 Equities Co.*, 763 F.Supp. 732 (1991). *See also, Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 241 (2d Cir.1984); *Holzsager v. Valley Hospital*, 646 F.2d 792, 797 (2d Cir.1984). In the interest of brevity, the pertinent portion of *Shlomchik* relating the issue of diversity jurisdiction is attached hereto as Appendix A.

### II.

*Amendment of the complaint and findings relating to a RICO cause of action and federal question jurisdiction*

Plaintiff requests under Fed.R.Civ.P. 15(b) that the complaint be amended by adding a new cause of action to conform the pleading with the evidence adduced at trial. The proposed new cause of action that plaintiff has just discovered he "implicitly plead in the initial complaint and proved at trial" (plft's memo, at 6) is a violation by defendants of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*

The foregoing statute provides:

[I]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

As defined in § 1961(5), a "pattern" is defined as requiring at least two acts of "racketeering activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); and *Furman v. Cirrito*, 828 F.2d 898 (2d Cir.1987). The predicate "racketeering activity" that plaintiff now asserts were in issue at trial and proven, and which plaintiff now seeks to charge in an amended complaint pursuant to Rule 15(b), are fraudulent representations in letters (*see* 18 U.S.C. § 1341 (mail fraud)) and telephone communications (*see* 18 U.S.C. § 1343 (wire fraud)) wherein defendants allegedly concealed certain facts pertinent to Schibuk's option to rescind his purchase of units and fraudulently rejected his request for rescission to retain his capital contribution funds. *See also* 18 U.S.C. § 1961(1).

The mail and wire fraud statutes have an extraordinarily expansive reach well beyond the common law limits. *See McNally v. United States,* 483 U.S. 350, 356–57, 107 S.Ct. 2875, 2879–80, 97 L.Ed.2d 292 (1987); *United States v. Margiotta,* 688 F.2d 108, 120 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); and "The Federal Mail Fraud Statute: Analysis of the Need for New Legislation" by the Committee on Criminal Law, *The Record of the Association of the Bar of the City of New York,* Vol. 14, No. 3, April 1989.

■ Amendments of pleadings to conform to the evidence are permissible provided that plaintiff can show that the *"issues not raised by the pleadings are tried by express or implied consent of the parties."* Fed.R.Civ.P. 15(b) (emphasis added); *Browning Debenture Holders' Comm. v. Dasa Corp.,* 560 F.2d 1078 (2d Cir.1977). Plaintiff's burden under Rule 15(b) in the instant case is an especially difficult one since the court must be persuaded that issues concerning mail or wire fraud in the context of a RICO claim, which was not raised in the complaint nor suggested at trial, were nonetheless tried by express or implied consent.

■ A RICO fraud claim, even if expressly alleged, must be averred in the complaint with particularity. *See* Fed.R.Civ.P. 9(b); *Bender v. Southland Corp.,* 749 F.2d 1205 (6th Cir.1984). The obvious purpose of such requirement is to give a defendant notice of the specific misconduct with which he is charged. *A fortiori* for purposes of determining whether issues of mail and wire fraud in the context of a RICO claim were tried with the express or implied consent of the parties, and therefore whether the complaint should be amended to allege a RICO count pursuant to Rule 15(b), such issues must have been raised at trial with some particularity. Without delineating the precise parameters of the foregoing, it suffices to observe here that proof adduced at trial simply on the issue of common law fraud is clearly insufficient—even if the proof shows that letters and telephone calls were involved.

The recent judicial pronouncements concerning a key requirement of a RICO cause of action, the presence of a "pattern" of conduct, particularly in light of the fluidity and uncertain case by case parameters of the "continuity plus relationship" test (*H.J. Inc.,* 109 S.Ct. at 2901–02) lead this court to the firm conclusion that issues relating to mail and wire fraud in the context of RICO, if tried at all in this case, were plainly not tried with the express or implied consent of the parties. Moreover, plaintiff's assertion that defendants implicitly consented to try a RICO claim is preposterous given the virtual impossibility of delineating the burden of proof in civil RICO claims even where the defendant is on notice of the claim prior to trial. *See e.g., United States v. Indelicato,* 865 F.2d 1370 (2d Cir.) (*en banc*), *cert. denied,* —— U.S. ——, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989) (traces the meandering and ever-changing state of the law with respect to what constitutes a "pattern" of racketeering under the RICO statute). *See also,* "RICO Reform—Again," *New York Law Journal,* Vol. 205, No. 94. May 16, 1991.

In sum, there is not the slightest suggestion whatever in the transcript of the trial that either party understood any of the evidence related to RICO predicate acts and consented to the trial of a RICO claim. It is perfectly obvious to the court that RICO, a criminal statute with an extraordinary civil remedy of treble damages and attorneys fees (18 U.S.C. § 1964(c)), was never in the minds of counsel until plaintiff's current motion for reargument was filed. This court ineluctably concludes that no issue concerning a "pattern of racketeering activity" (18 U.S.C. § 1962) or any other RICO issues are before the court or were tried with the consent of the parties, expressed or implied, within the purview of Rule 15(b). Plaintiff will not be permitted to utilize Rule 15(b) to transform the trial of an essentially commercial dispute into a trial of racketeering charges simply to clothe this court with federal question jurisdiction. Accordingly, plaintiff's Rule 15(b) motion to amend the complaint to add a RICO claim and to amend his "defective

allegations of jurisdiction," Rule 28 U.S.C. § 1653, is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motions to reopen and vacate the judgment of dismissal dated March 25, 1991, stay such judgment, amend the opinion, findings and conclusions dated March 19, 1991, amend the complaint, issue a decision on the merits whether or not the court finds jurisdiction, and for other relief is DENIED. The decision of March 19, 1991 and judgment of dismissal of March 25, 1991 are fully affirmed.

## APPENDIX A

[Page 7]

the court and requested to submit supplemental memoranda of law on the issues of diversity jurisdiction in light of the Supreme Court's decision in *C.T. Carden v. Arkoma Associates*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), and pendent jurisdiction.

In light of the subsequent decision in *Carden*, the court must revisit its ruling on December 15, 1986 that diversity jurisdiction exists in this case following the authority of the Second Circuit's holding in *Colonial Realty Corp. v. Bache & Co.*, [358 F.2d 178,] *supra.* [(2nd Cir.1966)] The court concludes that *Carden* has overruled *Colonial Realty Corp.*, and consequently we must now consider plaintiff's argument respecting pendent jurisdiction.

*Jurisdiction Based on Diversity of Citizenship*

At the time this action was filed, tried and decided and its interlocutory order was entered, *Colonial Realty* stood as a binding precedent *in this Circuit* with regard to the issue of diversity of citizenship in the case where a limited partnership is a party to the litigation. In *Colonial Realty*, Judge Friendly writing for the Second Circuit, said "a suit brought against a New York partnership must thus be considered to be against the general partners only and identity of citizenship between a limited partner and the plaintiff does not destroy

diversity." 358 F.2d at 184. *See also Pappas v. Arfaras*, 712 F.Supp. 307, 309 (E.D. N.Y.1989); *Westville Holdings, Inc. v. American Petroleum Partners*, 592 F.Supp. 44 (S.D.N.Y.1984).

Understandably, when Shlomchik chose to bring this action in

[Page 8]

the District Court in 1984, he relied on *Colonial Realty*. Unfortunately for plaintiff, by the time this court received the Magistrate's Report and Recommendation concerning the audit and accounting, dated December 6, 1990, some six years after commencement of this action and four years after the reference, the United States Supreme Court had handed down its February 27, 1990 ruling in *Carden*.

In *Carden*, Arkoma Associates—a limited partnership organized under Arizona law—sued Carden and another individual, both Louisiana citizens, on a contract dispute in the District Court relying on diversity of citizenship for federal jurisdiction. Defendants moved to dismiss the action on the ground that one of Arkoma's limited partners was also a Louisiana citizen. The District Court denied the motion finding the requisite complete diversity. The Fifth Circuit affirmed, holding with respect to the jurisdictional challenge, that complete diversity existed because Arkoma's citizenship should be determined solely with reference to the citizenship of its general, but not its limited partners.

The Supreme Court, Justice Scalia writing for the five member majority, reversed the Fifth Circuit and remanded. 110 S.Ct. at 1022. The majority opinion holds that a limited partnership is not in its own right a "citizen" of the state where it is organized within the purview of the federal diversity statute (28 U.S.C. § 1332(a)); that consequently, where a limited partnership is a party to an action, a federal court must look to the citizenship of the limited as well as the general partners; and that since Arkoma had

[Page 9]

one limited partner which had a common citizenship with the defendants, complete diversity was lacking.

In *Carden*, the suit was brought by the partnership, whereas in the current case, absent a realignment of the defendant partnership as a party-plaintiff (*Cf. Smith* [*v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957)] and *Swanson*, [*v. Traer*, 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221] *supra*), the action is solely by Shlomchik, a citizen of Pennsylvania, against R 103, a New York limited partnership, and the Hacks, individually and as general partners, both citizens of New York. However, *Carden*, which looks to the citizenship of *all* the limited partners to determine whether there is *complete* diversity, is expressly applicable whether the action is brought by or *against* the partnership. 110 U.S. at 1019–21. The short of the matter: in determining the existence of complete diversity of citizenship where a limited partnership is a party to the lawsuit, the court must consider the citizenship of not less than all of the limited partners. At the commencement of this action, Shlomchik was a limited partner of R 103 and so far as the record shows, he has retained that status throughout this litigation. Consequently, R 103 has a Pennsylvania limited partner (Shlomchik), thus preventing complete diversity of citizenship of the plaintiff and defendants under the rationale of *Carden* that the court must consider the citizenship of not less than *all* of the partnership's limited partners. *See Curley v. Brignoli, Curley & Roberts Associates*, 915 F.2d 81, 84 (2d Cir.1990) (derivative action by limited partners against limited partnership and general partner), citing *Phillips v. Kula 200*, 83 F.R.D. 533 (D.Haw.1978)

[Page 10]

(no diversity jurisdiction where limited partners sued limited partnership; citizen of plaintiff partners attributed to partnership, destroying diversity).

In a recent decision of this court in *Norman Schibuk v. Poinciana–Regency Limited Partnership*, 88 Civ. 3361, decided March 20, 1991, 1991 WL 42200, 1991 U.S. Dist. Lexis 3239, *motion for rehearing pending*, the action was dismissed for lack of diversity jurisdiction where Schibuk, a limited partner having a New York residence at the commencement of the action, brought suit against a Delaware real estate limited partnership having some New York limited partners. It was observed that "Schibuk's jurisdictional predicament [in light of *Carden*] is further exacerbated by the fact that not only is the limited partnership a party defendant to the action, but the suit was brought against it by one its limited partners, who at the commencement of the action, must be a diverse party for federal jurisdiction." (Op. at 882). Consequently, following the rationale of *Carden* that the citizenship of *all* the limited partners of a limited partnership must be considered in determining the citizenship of the partnership, this court concluded that so long as a plaintiff in an action against the limited partnership retains his status as a limited partner of the defendant limited partnership, there cannot be diversity between the plaintiff and the limited partnership. *Curley v. Brignoli, Curley & Roberts Associates*, 915 F.2d 81, 84 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991).

Shlomchik sees no basis upon which to distinguish [*Carden*] on

[Page 11]

the merits from this case, but does argue that [*Carden*] should not be applied retroactively to this case because of the substantial inequitable result of such application" (plft's memorandum, at 4). Defendants, on the other hand, maintain with some merit that "[p]laintiff's request that this Court forbear in 'retroactively applying' *Carden* is simply a request that the Court willfully neglect to apply the law" (deft's memorandum, at 2).

Courts, as a general rule, apply the law in effect at the time they render their decision. *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 281, 89 S.Ct. 518, 525–26, 21 L.Ed.2d 474 (1969); *Curley*, 915 F.2d at 83. However, this court recognizes

the equitable principle in the general doctrine of nonretroactivity of judicial decisions, and that in appropriate circumstances courts may and do stipulate that their decisions should have only prospective application. The Supreme Court itself has expressly ruled in certain cases that in the interest of justice its own decision should be applied only prospectively, and has articulated a three-factor analysis that should be considered in the nonretroactivity question. *See e.g., Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982); *Cipriano v. Houma*, 395 U.S. 701, 706, 89 S.Ct. 1897, 1900–01, 23 L.Ed.2d 647 (1969); and *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971). *See also, Byrne v. Buffalo Creek Railroad Co.*, 765 F.2d 364 (2d Cir.1985).

Unquestionably, then, it is the prerogative of the Supreme Court in appropriate circumstances to make the three-factor analysis and expressly declare that its *own* holding should have no retroactive application. But it is altogether another matter for

[Page 12]

the District Court in a case before it to declare that a controlling Supreme Court decision should be *given no retroactive application*, as proposed by Shlomchik.

Where, as in *Carden*, the Supreme Court itself neither makes a three-factor nonretroactivity analysis nor otherwise intimates any intention that its ruling should be given only prospective effect, this court, obviously, should approach counsel's proposal to apply *Carden* only prospectively with extreme caution and restraint. This is not to say that there could never be an appropriate case for a lower court's refusal to give retroactive effect to a Supreme Court decision. *See e.g., Byrne v. Buffalo Creek R. Co.*, *supra* (statute of limitations barring action), discussed *infra*. But plaintiff has failed to call our attention to a single instance wherein a *District Court* refused to retroactively apply *Carden* or any other decision of the Supreme Court.

In *Schibuk, supra*, plaintiff argued in avoidance of the *Carden* holding that at the commencement of the action in 1988, there was under "existing jurisprudence" diversity of citizenship between the parties. Notwithstanding the change in the law in this Circuit by *Carden*, the action was dismissed since: (1) the issue of subject matter jurisdiction had been raised as an affirmative defense in the answer, again in the pretrial order, and again in a post-trial submission prior to judgment; (2) irrespective of the foregoing, it is well settled that subject matter jurisdiction may not be conferred on the court by estoppel, waiver or the consent of the parties; and (3) Fed.R. Civ.P. 12(h)(3), requires that *"[w]henever*

[Page 13]

it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action" (emphasis added).

Significantly, unlike the Supreme Court cases cited by plaintiff, *Carden* contains no three-factor nonretroactivity analysis or even hints at a nonretroactive application of its holding. Indeed, the *Carden* majority applied its holding retroactively in the very case before it, notwithstanding that eight of the thirteen jurists that considered the jurisdictional question (*viz.*, the District Court, the unanimous three-judge panel of the Fifth Circuit, 874 F.2d 226 (1988), and the four dissenting Justices in the Supreme Court) disagreed with the majority's holding. Plainly, then, the Supreme Court decisions cited by plaintiff, wherein the Court expressly directed only a prospective application of its holding, do not require this court to give a nonretroactive application to *Carden*, and therefore, precedent or other authority for such an approach here must be found elsewhere.

*See also Curley*, discussed *infra*, wherein the Second Circuit applied *Carden* retroactively, but recharacterized derivative action as a class action and dropped limited partnership as a party to the action as a dispensable party to preserve diversity jurisdiction.

As suggested above, plaintiff's argument for the equities of a nonretroactive applica-

tion of *Carden* is heavily bottomed on the period of time, nearly four years, that the accounting matter was pending before the Magistrate, during which period *Carden* changed the law in this Circuit. In that connection, plaintiff points up

[Page 14]

what he regards as the closely analogous circumstances facing the Second Circuit in *Byrne v. Buffalo Creek R. Co., supra.*

There, in 1985 Judge Lumbard declined in the interest of justice to give retroactive application to a six months statute of limitations which the Supreme Court had ruled in a 1983 decision was applicable to plaintiff's suit for wrongful discharge where: (1) in commencing the action in 1975, plaintiff relied on a six years statute of limitations which the Second Circuit in a 1970 decision had held was applicable to wrongful discharge cases; (2) plaintiff's case was not reached for trial by the District Court until 1979, four years after the complaint was filed; (3) the District Court then delayed for three years, until 1982, to enter an interlocutory decision finding defendants liable for damages and the action timely commenced; (4) a final judgment in the action was then further delayed by the District Court for determination of the proper assessment and apportionment of damages; and (5) during the latter period of delay, about one year, the Supreme Court in 1983 decided that it was the six months statute of limitations which governed wrongful discharge actions and *indicated its intention that the ruling be given retroactive effect.* In 1984, the Second Circuit held in another case, that the 1983 Supreme Court decision had retroactive effect.

In November 1984, the District Court in *Byrne,* believing that it was mandated to do so by the Circuit Court's earlier 1984 holding that the 1983 Supreme Court decision was to be applied retroactively, dismissed all pending wrongful discharge cases,

[Page 15]

including the *Byrne* action. The Second Circuit (notwithstanding its ruling giving the Supreme Court's 1983 decision retroactive application) reversed the District Court's dismissal of the action.

The Second Circuit reasoned that it was compelled by considerations of equity, the District Court's determination of liability in plaintiff's favor and the time and money already expended in the litigation by the parties not to penalize Mr. Byrne for a change in the law during the inexcusable, unexplained and extraordinary delays over a period of nearly ten years by the District Court in resolving "simple issues" (*Id.,* at 366).

Thus, in *Byrne* the Court of Appeals felt compelled to "carve out a *limited exception* " to its previously mandated retroactive application of the 1983 Supreme Court decision barring the action (*Id.,* at 367, emphasis added).

This court declines to limit *Carden* to prospective application on the basis of *Byrne,* which did not involve the issue of subject matter jurisdiction, and which in any event we regard as expressly limited by the Second Circuit to the facts and circumstances of that case. Finding that *Carden* overrules *Colonial Realty Corp.,* and that the doctrine of nonretroactive application should not be applied in the case of *Carden,* the court is compelled to reverse its previous ruling that it has subject matter jurisdiction in this individual and *derivative action* predicated on diversity of citizenship.

Notwithstanding the foregoing, *Curley, supra,* recently decided by the Second Circuit on September 20, 1990 and not cited in the

[Page 16]

memoranda of law of either of the parties, suggests a novel, but viable, solution to the substantial impediment to diversity jurisdiction created by *Carden* in a situation where: (1) a derivative action brought by a limited partner on behalf of the partnership could appropriately have been brought as a class action pursuant to Fed.R.Civ.P. 23.2;

(2) the derivative action may appropriately be recharacterized by the court *sua sponte* as a class action under Fed.R.Civ.P. 23.2; and (3) the limited partnership can be dismissed as a dispensable party-defendant to preserve diversity jurisdiction.

As noted above in the discussion of the background of this action, Shlomchik, indeed, sought Rule 23.2 class action certification before Judge Goettel, but by oral decision rendered from the Bench on October 5, 1984, Judge Goettel denied Shlomchik's motion, without prejudice to renew upon a proper showing. Judge Goettel found that Shlomchik had failed to satisfy the threshold requirement that the class action be in the best interest of the class and for failure to satisfy the numerosity requirement. *See* Order dated October 5, 1984. The motion was never renewed.

*Curley,* clearly disposes of both of the objections to Shlomchik's Rule 23.2 unincorporated association class action motion raised by Judge Goettel, *i.e.,* whether Shlomchik as representative of class would protect the interests of the association and its members, and the failure to satisfy the numerosity requirement. *See Id.,* at 85–87. The fact that Shlomchik never renewed his motion for class action certification nor

[Page 17]

suggested the *Curley* approach in his recent memorandum of law concerning diversity jurisdiction, does not relieve the court of its own "obligation to explore any promising avenue to the District Court's jurisdiction, whether or not it is suggested by the parties." *Id.,* at 85, citing *Association of Am. Medical Colleges v. Califano,* 569 F.2d 101, 111 (D.C.Cir.1977).

In short, after considering the entire record before the court and the rationale of *Curley* (which obviously were not available either to counsel or to Judge Goettel at the time of his 1984 ruling on plaintiff's application) and the memoranda of law filed by the parties with Judge Goettel concerning plaintiff's Rule 23.2 motion, the court holds: (1) Shlomchik properly sought to bring this case as a rule 23.2 class action; and (2) recharacterization of the derivative

action as a class action and dropping R 103 as a party-defendant would be appropriate. *Curley,* 915 F.2d at 87–88. However, such "major surgery" a la *Curley* is unnecessary at this juncture in view of the conclusion, *infra,* that the court has pendent jurisdiction.

### Federal Question and Pendent Jurisdiction

We reach plaintiff's argument that assuming the absence of diversity jurisdiction, there is in any event, pendent jurisdiction over the state law claims in this case. The court agrees.

As it was determined in the decision of December 15, 1986 [*Shlomchik v. Richmond 103 Equities Co.*], 662 F.Supp. [365] at 370 [ (S.D.N.Y.1986) ], that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and federal question jurisdiction pursuant to the Securities Exchange Act of 1934, §§ 10(b), 27, 15 [U.S.C. §§ 78j(b), 78aa.]